STATE OF MARYLAND *v.* LIONEL BAILEY, ERIC
JAY BASS, MICHAEL GRODSKY BASS, HARRIET
BRODER BRILL, MICHAEL GRANDUS, KERRY
LYNN RICKER, BERNI LEE SIMON,
A/K/A DAVID MICHAELS, STEVEN
CRAIG SMITH AND DEAN
GUST TRAKAS

[No. 4, September Term, 1980.]

*Decided November 24, 1980.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Thomas P. Barbera, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellant.

*Alan J. Goldstein,* with whom were *Horowitz, Oneglia, Goldstein, Foran & Parker, P.A.* on the brief for Michael Grodsky Bass and Bernie Lee Simon, etc.; *Barry H. Helfand* and *Helfand, Stein, Sperling, Bennett & Dameron* on the brief for Eric Jay Bass, Michael Grandus and Steven Craig Smith; *William O. Lockwood* and *Quinn, Scanlin, Maiberger & Lockwood* on the brief for Lionel Bailey; *Marvin P. Sadur* and *Sadur & Pelland, Chartered,* on the brief for Harriet Broder Brill; *George E. Burns, Jr., Assistant Public Defender,* on the brief for Kerry Lynn Ricker; *Peter I. J. Davis* and *Shaffer & Davis* on the brief for David Michaels, all appellees. Submitted on brief by *Louis Fireison* and *Fireison & Olshonsky, P.A.* for appellee Dean Gust Trakas.

COLE, J., delivered the opinion of the Court. ELDRIDGE, J., concurs in the result.

In this case, we shall address the question this Court specifically reserved in *Hayward v. State,* 278 Md. 654, 366 A.2d 52 (1976) and *Lohss and Sprenkle v. State,* 272 Md. 113, 321 A.2d 534 (1974), i.e., whether the State may raise the propriety of a trial court's suppression of evidence on appeal from the dismissal of an indictment pursuant to Maryland Code (1974, 1978 Cum. Supp.), § 12-302 (c) (1) of

the Courts and Judicial Proceedings Article. We did not reach the question in *Hayward* because the trial court never ruled on the adequacy or validity of the warrant there involved. We reversed in *Lohss and Sprenkle* because the State had consented to the dismissals and was not an aggrieved party. In *State v. Mayes,* 284 Md. 625, 399 A.2d 597 (1979), we assumed, without deciding, that such an appeal would lie. We now find that the issue is clearly presented by the facts of this case and is ripe for decision.

The pertinent facts may be stated briefly. On February 16, 1979, an ex parte order, authorizing the interception of telephone communications, was issued for two telephone numbers in Montgomery County. The order provided that the interception was to commence as soon as practicable; that the authorization was to expire no more than thirty days from the day interception began; and that the intercept was to be conducted in such a way as to minimize the interception of communications not pertinent to the objective of the investigation. Absent from the order, however, was a directive to terminate the operation upon the attainment of the authorized objective.

The provisions of the order were followed scrupulously by the police, who made weekly reports to the issuing judge. The intercept was terminated on March 14, 1979, two days prior to the thirty-day required termination date and a report and return were made to the issuing judge on March 16, 1979. Indictments were obtained by the State and filed in the Circuit Court for Montgomery County. The accused subsequently filed motions to suppress which were granted based on the above noted omission in the wiretap order. The trial court also granted the defendants' motions to dismiss the indictments, as the wiretap evidence had been relied upon by the grand jury in returning the indictments. The State appealed to the Court of Special Appeals and we granted certiorari prior to consideration by that court.

The State contends it has the right to appeal from a final judgment of dismissal and that in doing so it may challenge the grounds for such dismissal which in this case is the

correctness of the trial court's rulings on the motions to suppress. The defendants counter by claiming that the State may not appeal from the granting of motions to suppress and may not contest the correctness of such ruling in an appeal of a motion dismissing an indictment.

1

We begin our consideration by recognizing that any right of appeal, in either a civil or criminal case, must find its source in an act of the legislature. *Clark v. Elza,* 286 Md. 208, 211-212, 406 A.2d 922 (1979); *Estep v. Estep,* 285 Md. 416, 422, 404 A.2d 1040 (1979); *Smith v. Taylor,* 285 Md. 143, 146, 400 A.2d 1130 (1979); *Peat & Co. v. Los Angeles Rams,* 284 Md. 86, 90, 394 A.2d 801 (1978); *Lohss and Sprenkle v. State, supra.* Maryland Code (1974, 1978 Cum. Supp.) § 12-302 (c) (1) of the Courts and Judicial Proceedings Article provides: "In a criminal case, the State may appeal . . . [f]rom a final judgment granting a motion to dismiss or quashing or dismissing any indictment, . . . ." It is apparent, then, under this unambiguous language, that unless the State acquiesced or consented to the dismissal as in *Lohss,* or by some other means has impeded its right to appeal, it may do so.

The question next posed is whether in appealing the State may argue the correctness of the trial court's ruling on the motion to suppress; for it is also the established rule in this jurisdiction that when a trial court suppresses evidence that it determines was illegally obtained, no right of appeal exists from the granting of that motion. *Hayward v. State, supra,* 278 Md. at 657. This is true whether the State moves to stay the proceedings and take an interlocutory appeal or waits until the accused has been acquitted. Therefore, to allow the State the right of appeal where the motion to dismiss is granted as the result of the trial court's sustention of a motion to suppress, is to permit the State to achieve indirectly that which it is forbidden to do directly. The rationale for that which at first blush appears inconsistent is rooted in the policies which underlie the rules.

The reason that the State is barred from appealing from a suppression order prior to an adjudication on the merits is that it is not a final judgment. *Neal v. State,* 272 Md. 323, 324-325, 322 A.2d 887 (1974); *Pearlman v. State,* 226 Md. 67, 70, 172 A.2d 395 (1961) (and cases cited therein). The statute specifically provides that the State may appeal "from a final judgment" and the court's ruling gives rise only to an interlocutory order. Thus, the State's right of appeal has not ripened. Our rationale has been to avoid piecemeal appeals, *Peat & Co. v. Los Angeles Rams,* 284 Md. 86, 394 A.2d 801 (1978); *Jolley v. State,* 282 Md. 353, 384 A.2d 91 (1978), and thereby assure an orderly administration of justice by allowing such appeals only where the ultimate issue has been resolved.[1]

But here, the State responds, is its dilemma. If it must wait for a final judgment, it has lost its right of appeal. If the accused is convicted, the question is moot; if he is acquitted, the State is barred by a longstanding policy.

> It has always been a settled rule of common law that after acquittal of a party upon a regular trial on an indictment for either a felony or a misdemeanor, the verdict of acquittal can never afterward, on the application of the prosecutor, in any form of proceeding, be set aside and a new trial granted .... [*State v. Shields,* 49 Md. 301, 303 (1878).]

The State further complains that in addition to this strong common law tradition regarding acquittals, a right of appeal is barred by the double jeopardy clause of the fifth amendment of the United States Constitution. *Benton v. Maryland,* 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). Once a determination has been made on the merits, a defendant has the constitutional right not to be exposed to a second trial for the same offense.

The State maintains, however, that in this case the court is not confronted with problems of interlocutory orders or

---

1. The exception to this rule is that a criminal trial may be interrupted where a constitutional question is at issue. *See* Pearlman v. State, 226 Md. 67, 172 A.2d 395 (1961) and cases cited therein.

acquittals because the order dismissing the indictments is final and no question of jeopardy or multiple punishment arises since there has been no trial on the merits. It contends that these defendants have no right to benefit from an error of law if the error can be corrected without subjecting them to a second trial.

The defendants' reply is that even if review is authorized, such authorization should not extend to a review of the motions to suppress. They reason that, since the legislature did not explicitly grant authority to the courts to review motions to suppress which are the grounds for motions to dismiss, the legislature never intended to authorize such inquiry and the Court should deny the State the opportunity to pursue a review of such suppression rulings.

Fundamental to a resolution of this issue is an understanding of the function and role of a motion to dismiss in our system of justice. It is now settled in Maryland under Rule 736, formerly Rule 725a, that defenses and objections to an indictment that were once raised by demurrers, motions to quash, pleas in abatement and certain other pleas are now raised by motions to dismiss. The rule further requires that any such defenses and objections based on defects in the institution of the prosecution, or in the indictment or information other than that it fails to show jurisdiction in the court or to charge an offense, may be raised only by motion before trial. Failure to file such defense prior to trial amounts to a waiver thereof, except that the court for good cause shown may grant relief from the waiver.

In passing upon the validity of a motion to dismiss an indictment, the appellate courts of this State have been steadfast in holding that: (1) the motion is not a proper vehicle for testing the admissibility of testimonial evidence at trial, *Richardson v. State,* 7 Md. App. 334, 255 A.2d 463 (1969); (2) an unlawful arrest is not a ground for quashing an indictment, *Matthews v. State,* 237 Md. 384, 206 A.2d 714 (1965); (3) a defendant is not entitled to dismissal simply because the prosecution acquired incriminating evidence in violation of law, even if tainted evidence was presented to the grand jury, *Everhart v. State,* 274 Md. 459, 337 A.2d 100

(1975); (4) an indictment should be dismissed where it has been returned by grand jurors who had been required to show a belief in God, *State v. Madison,* 240 Md. 265, 213 A.2d 880 (1965).[2]

In sum, a motion to dismiss the indictment will properly lie where there is some substantial defect on the face of the indictment, or in the indictment procedure, or where there is some specific statutory requirement pertaining to the indictment procedure which has not been followed. In the absence of statutory authority to the contrary, where the object of appellate review of a dismissal is to test a pre-trial ruling of the court dealing with the admissibility of evidence, appellate review of such pretrial ruling should be denied. This is so because the motion to dismiss attacks the sufficiency of the indictment, not the sufficiency of the evidence.

It follows, therefore, that ordinarily we would be precluded from reviewing the correctness of the trial court's ruling on the motion to suppress in the instant case. However, § 10-405 of the Courts and Judicial Proceedings Article provides the necessary authority:

> Whenever any wire or oral communication has been intercepted, no part of the contents of the communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before the court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of this State, or a political subdivision thereof if the disclosure of that information would be in violation of this subtitle.

---

2. The present Md. Code, § 8-211 (a) of the Courts and Judicial Proceedings Article provides:

> In a criminal case, before the voir dire examination begins, the defendant or State's attorney, as the case may be, may move to dismiss the indictment or stay the proceedings on the ground of substantial failure to comply with the provisions of this title in selecting the grand jury or petit jury.

Here the trial court suppressed the wiretap evidence because it concluded that the evidence was seized illegally. It then dismissed the indictment because this illegal evidence was presented to and relied on by the grand jury which returned the indictments. As such, the basis for dismissal is inextricably intertwined with the basis for suppressing the evidence and the two motions should be reviewed together. To hold otherwise would gut the statute authorizing the State's right to appeal from a dismissal of the indictment and ignore the clear prohibition of the statute.

We hold, therefore, that where the defendant has successfully moved to suppress wiretap evidence and such evidence was relied on by the grand jurors in returning the indictment and, prior to a hearing on the merits, the trial court has dismissed the indictment pursuant to a motion by the defendant, not acquiesced in or consented to by the State, the State has a right to appeal such dismissal and to argue the correctness of the trial court's ruling on the motion to suppress.

## II

We turn now to determine whether the trial court was correct in granting the motion to suppress. If it was correct, the grounds for dismissing the indictments were sufficient; if not, the State will be entitled to pursue the prosecution of these defendants.

The Maryland "Wiretapping and Electronic Surveillance" law is an offspring of the Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, tit. III, § 802, 82 Stat. 212, commonly called Title III. Title III provides federally mandated minimum guidelines for the use of wiretaps. The states are required to apply a standard no more lenient than the federal law, and may opt for a more restrictive policy if they so choose. *State v. Mayes, supra,* 284 Md. at 627-629. The Maryland Statute is codified in Maryland Code (1974, 1978 Cum. Supp.), §§ 10-401 to 10-412 of the Courts and Judicial Proceedings Article and is

modeled after Title III, which is presently codified in 18 U.S.C. §§ 2510-2520 (1976). In construing the Maryland statute, therefore, we must ensure that our interpretation does not fall below federal guidelines.

In *Berger v. New York,* 388 U.S. 41, 87 S. Ct. 1873, 18 L. Ed. 2d 1040 (1967), the United States Supreme Court struck down New York's wiretap law finding that the statute placed "no termination date on the eavesdrop once the conversation sought [was] seized." 388 U.S. at 59-60. This decision was prior to the enactment of Title III and in response thereto Congress enacted § 2518 (4) (e) as a part of the act, which provided that "the period of time during which such interception is authorized, including a statement as to whether or not the interception shall automatically terminate when the described communication has been first obtained" shall be specified in the order. It is apparent, then, that the inclusion of this provision is a necessary and minimal prerequisite to a valid intercept order.

The Maryland statute tracks the federal statute's requirement of a termination directive. Section 10-408 (e) explicitly provides "Every order . . . shall contain a provision that the authorization to intercept . . . must terminate upon attainment of the authorized objective . . . ." Section 10-408 (i) (1) states, "Any aggrieved person . . . may move to suppress the contents of any intercepted wire or oral communication . . . on the grounds that . . . (ii) The order of authorization under which it was intercepted is insufficient on its face, or was not obtained or issued in *strict* compliance with the subtitle . . ." (emphasis supplied). The language is unequivocal, leaving no room to doubt that the legislature intended that the wiretap order conform scrupulously to the mandate of the statute.

The State contends, however, that this Court in *Spease and Ross v. State,* 275 Md. 88, 338 A.2d 284 (1975), applied a substantial compliance test in determining whether the statute had been followed, in contrast to our holding in *State v. Siegel,* 266 Md. 256, 274, 292 A.2d 86 (1972), where we said we would strictly construe the statutory requirements. If the State is correct, there would be a conflict in the two

decisions and despite our annotation to the contrary (*Spease and Ross v. State, supra,* 275 Md. at 108, n. 3), *Spease* would overrule that portion of *Siegel.* Such an interpretation connotes a superficial reading of the cases, however, for no such conflict exists. The cases are consistent and compatible with each other.

*Siegel* involved a wiretap order that lacked three of the requirements directed by Title III, one of which was that it failed to provide for the intercept to terminate upon attainment of the authorized objective. (Maryland's present wiretap statute had not then been enacted.) This Court held that the absence of these provisions was fatal error because they were "*preconditions* designed to protect appellee's constitutional rights . . . ." *State v. Siegel, supra,* 266 Md. at 274 (emphasis supplied). The Court also noted that "[t]he statute sets up a strict procedure that *must* be followed and we will not abide any deviation, no matter how slight, from the prescribed path." *Id.* (emphasis in the original).

In *Spease,* on the other hand, the wiretap order was valid on its face and all the statutory requirements were fulfilled. The defendant asserted that the State had not abided by the terms of the order as issued because it had failed to minimize the interruption of unauthorized communications and had failed to serve the defendants with a special notice containing an inventory of intercepted conversations. Specifically, the defendants alleged the police had not disconnected the listening device when they became aware that the conversation was of a personal nature and had there-fore eavesdropped on conversations extraneous to those authorized by the warrant. The defendants alleged also that they had not been served a separate inventory of conversations intercepted, though the search and seizure warrant executed by the police and given to the defendants contained the intercepted conversations. It was in this context that we held that where the alleged violation was "not a precondition to obtaining intercept authority," 275 Md. at 108, substantial compliance could be allowed.

The difference between the two cases is clear. The statutory provisions which require the wiretap order to con-

form to specific minimum guidelines are those which the legislature perceives to contain minimum safeguards to constitutional rights. Once the directives of the statute have been met and a valid order has been issued, compliance, at least in the area of minimization of unauthorized communications and service of inventory, can be judged by a more lenient substantial compliance standard.

The State would have us adopt the position that, since the police in essence complied with the missing provision in the order when they terminated the intercept two days early, there was no prejudice to the defendants and no derogation of their constitutional rights. The answer to this contention was set forth by the United States Supreme Court in *Katz v. United States,* 389 U.S. 347, 356-357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967):

> It is apparent that the agents in this case acted with restraint. Yet the inescapable fact is that this restraint was imposed by the agents themselves, not by a judicial officer . . .. In the absence of such safeguards, this Court has never sustained a search upon the sole ground that officers . . . voluntarily confined their activities to the least intrusive means consistent with that end.

In the instant case, the omission of the termination directive in the wiretap order rendered the instrument invalid *ab initio.* The order failed to meet the minimum requirements of the federal statute and was in clear violation of the plain meaning of the Maryland statute as announced by this Court. The judgment of the Circuit Court for Montgomery County granting the motion to suppress was, therefore, correct and since upon this ground it dismissed the indictment, we affirm.

> *Judgment affirmed.*
> *Costs to be paid by Montgomery County.*

Eldridge, J., concurs in the result.