STATE of Delaware,

v.

Gregory PERRY, et al.

Superior Court of Delaware,
New Castle County.

Submitted: March 19, 1990.
Decided: May 3, 1990.

Charles E. Butler, Deputy Atty. Gen., Dept. of Justice, Wilmington, for State.

Joseph A. Hurley, Wilmington, for defendants Christine Babbett, David Bloom, Michael Bloom, William Bradley, Linda Hurley, and Gregory Perry.

Eugene J. Maurer, Jr., Wilmington, for defendant David Perry.

Christopher J. Battaglia, Biggs & Battaglia, Wilmington, for defendants Carmine Casper, Stephan Green, and Beth Strauss.

## OPINION

POPPITI, Judge.

This matter is presently before the Court on defendants' motions to suppress wiretap evidence. In its response to the motions, the State maintained that the defendants' have failed to make the requisite showing to entitle them to an evidentiary hearing on the suppression issues. I agreed with the State and on the record February 5, 1990, decided that the suppression issues could be decided as a matter of law without a hearing. *See Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1977); *United States v. Cantu,* 625 F.Supp. 656 (N.D.Fla.1985), *aff'd,* 791 F.2d 940 (11th Cir.1986). To properly decide

these issues as a matter of law, I permitted the defendants to supplement the record. Thus the record before me consists of all the wiretap applications with affidavits and accompanying orders, the complete wiretap logs, affidavits and appendices filed by the defendants, and full briefing.

## I. FACTUAL BACKGROUND

On January 8, 1989, my colleague, Judge Vincent A. Bifferato of this court issued an order pursuant to 11 *Del.C.* § 1336 authorizing the wire intercept of the telephones of Joseph Fragomele and Gregory Perry by the Wilmington Police Department [hereinafter referred to as the "Perry intercept"]. The application for the intercept states the affiants' beliefs *inter alia* that an illegal drug trafficking conspiracy existed whereby large quantities of cocaine were being imported to Wilmington and then distributed amongst a certain network of people and into certain nightclubs in the west-side of Wilmington. Judge Bifferato has by designation of the President Judge of the Superior Court been designated to receive applications for and to enter orders authorizing interceptions pursuant to 11 *Del.C.* § 1336(a)(8). Based on information contained in the application, Judge Bifferato determined that there was probable cause to believe that Joseph Fragomele, Gregory Perry and other unknown persons were engaged in a continuing criminal activity, namely dealing in narcotic drugs; that evidence of such offenses could be obtained through a wire intercept of Greg Perry's phone; that normal investigative procedures have been tried and failed or appeared likely to fail; and that the telephones were being used for the commission of certain enumerated offenses. The initial interception was not to exceed thirty (30) days and thus would terminate on February 7, 1989.

On January 30, 1989, the Wilmington Police Department, based on information received through the Perry intercept, applied to Judge Bifferato for an order authorizing the wire interception of Stephen B. Ademski's telephone line [hereinafter referred to as the "Ademski intercept"]. The applica-

tion for this intercept stated the affiants' beliefs that Greg Perry had bought cocaine in Pennsylvania on January 17, 1989, and that Ademski was Perry's partner in the distribution of the cocaine. Based on the information in the application, Judge Bifferato determined that there was probable cause to believe the asserted facts. He therefore signed an order authorizing such an intercept to begin on January 30, 1989 and to terminate on March 1, 1989.

Finally, on February 7, 1989, the Wilmington Police Department applied for and received an order signed by Judge Bifferato, authorizing a thirty (30) day extension of the Perry intercept. The application for this extension stated the same needs for telephonic surveillance as presented in the two previous applications, and also expressed on information and belief that Greg Perry and Ademski were "partners in a cocaine distribution scheme" and that in the near future they were going to buy another large quantity of cocaine from defendant Arire Shemish, a Pennsylvania supplier. Pursuant to information gained during the extension regarding an expected buy in Pennsylvania the Wilmington Police arrested defendant Perry as he traveled back from Pennsylvania on February 21, 1989.

The defendants have moved to suppress all conversations intercepted through the telephone line of Gregory Perry between January 9, 1989 and February 21, 1989. I will first sketch the general procedural guidelines that govern motions to suppress in the wiretap context, and then decide the defendants substantive challenges to the evidence raised in their motions to suppress.

## II. PROCEDURAL BACKGROUND

Title 11 of the Delaware Code Section 1336 is the Delaware wiretap statute. Delaware's statute is patterned after the federal wiretap statute, Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C.A. § 2510 et seq. ["Title III"]. The two statutes are "in all material respects virtually identical." *United States v. Swan*, 545 F.Supp. 799, 804

(D.Del.1982). Given the congruence between the two statutes, in the absence of Delaware case law, I will use federal case law interpreting the similar language to decide the issues raised in these motions.

Both 11 *Del.C.* § 1336 and Title III provide for the suppression of wiretap evidence on certain grounds; 11 *Del.C.* § 1336(t) provides that any "aggrieved person" may move to suppress the contents of wiretap evidence on the grounds that:

"(1) [t]he communication was unlawfully intercepted;

(2) The order of authorization is insufficient on its face;

(3) The interception was not made in conformity with the order of authorization."

*See also* 18 U.S.C.A. § 2518(10)(a).

There are therefore three separate categories into which any given challenge to the intercept might fall.[1] First, a defendant may contest governmental conduct that occurred prior to the order authorizing the wiretap, 11 *Del.C.* § 1336(t)(1). These challenges include those relating to probable cause. The second category, 11 *Del.C.* § 1336(t)(2), involves the facial sufficiency and technical validity of the court's order authorizing the wiretap. The third and final category, 11 *Del.C.* § 1336(t)(3), involves governmental conduct occurring after the court issues the intercept and during the operation of the intercept order.

The defendants in this case have raised a panoply of issues relating to the categories outlined above. Since the defendants' arguments do not fit neatly into these categories, I have digested and narrowed the many arguments into five parts, with subparts. I am satisfied that the questions to be answered are as follows:

1. Is the Delaware wiretap statute unconstitutional because it allows an order to be issued if there "is or was" probable cause?

2. Did the affiants' statements for the necessity of the wiretap meet the requirements of 11 *Del.C.* § 1336?

3. Does the order particularly describe the communications sought, and thus, meet the specificity requirement of a search warrant?

4. (a) Is the Delaware wiretap statute invalid because it does not require minimization?

 (b) Were conversations properly minimized in this case?

5. Is the order in this case invalid because it did not include a termination upon attainment of objective provision?

I will now consider each of these questions *seriatim.*

### III. DISCUSSION

1) *Is the Delaware wiretap statute unconstitutional because it allows an order to be issued if there "is or was" probable cause?*

■■■ I am satisfied that the answer is no.

The defendants assert that the Delaware wiretap statute, 11 *Del.C.* § 1336, is unconstitutional in that it permits an electronic surveillance warrant to issue if there "was" probable cause. *See* 11 *Del.C.* § 1336(i).

Title 11, Section 1336(i) provides that a judge may enter an order authorizing the interception of wire communications "if the Court determines on the basis of the facts submitted by the applicant that there is or was probable cause" to believe that the interceptee "is ... or *was*" engaged in a continuing criminal activity or "is committing ... has or *had*" committed a certain offense, that particular communications concerning such offense may be obtained through a wire intercept, that normal investigative procedures have been tried or would fail, and that the facilities from which communications "are to be intercepted, are or *have been used*" in the connection with the commission of the offense (emphasis added).

The defendants assert that this section permits a wiretap order to issue upon "stale" probable cause since the section

---

1. For more discussion of this three-part approach, see *United States v. Cantu,* 625 F.Supp. 656 (N.D.Fla.1985), *aff'd,* 791 F.2d 940 (11th Cir.1986).

permits an order to issue upon a finding that there "was" probable cause, in violation of the Delaware Constitution and United States Constitution. In pertinent part the Delaware Constitution at article I § 6 provides that a search warrant shall not issue "unless there *be* probable cause" (emphasis added).[2] The Supreme Court of Delaware in *Wicks v. State*, Del.Supr., 552 A.2d 462, 464 (1988) held that probable cause must exist at the time the warrant is sought and not merely at some time in the past. It is well settled in Delaware that the concept of "staleness" relates to information that has become stale "due to an impermissible delay in securing a warrant." *Blount v. State*, Del.Supr., 511 A.2d 1030, 1033 (1986) *quoting Jensen v. State*, Del. Supr., 482 A.2d 105, 112 (1984).

Applying the foregoing to the provisions of the Delaware wiretap statute, I am satisfied that Section 1336(i) does not permit the issuance of a wire intercept order upon a showing that probable cause existed at some time in the past as the defendants suggest. When reading the statutory section as a whole, as I must do,[3] the section merely allows a judge to issue an intercept order on a showing that there is probable cause that evidence, via communications of crimes committed in the past, will be presently obtained through a wire intercept.

In Section 1336(i) there are indeed numerous instances where the past tense is used. The use of past tense, however, relates to offenses committed in the past, and not to the existence of probable cause. If therefore the issuing judge finds probable cause that the "person is ... or *was* engaged ... or is committing, *has* or *had* committed" certain offenses and the telephone facilities "are or *have been* used" in connection with such offenses then he can then order a wiretap. In my view the section does not permit a judge to find that probable cause existed in the past and not now, but allows a judge to find probable cause to believe that particular communications concerning certain offenses, past or present, will be obtained *now* pursuant to a wiretap. This interpretation is also reflected in Section 1336(i)(2) which reads: "[p]articular communications concerning such offense may be obtained through such interception."

Consistent with this construction of the statutory provision, in the initial wiretap order as well as in the order for the extension, Judge Bifferato stated: "[t]he court having reviewed said application and having found probable cause to believe that" the defendants "*are* committing or *have* committed" certain enumerated offenses and that "[e]vidence of such offenses will be obtained through interception" of wire communications. Thus, Judge Bifferato clearly concluded that probable cause existed at the time he entered the intercept order.

Having stated the above, I am satisfied that 11 *Del.C.* § 1336(i) is not unconstitutional.

2) *Did the affiants' statements for the necessity of the wiretap meet the requirements of 11 Del.C. § 1336?*

■ I am satisfied that the answer is yes.

The defendants next contend that the State's application and accompanying affidavits fail to demonstrate a factual basis for using a wiretap in lieu of normal investigative procedures. The defendants attack the veracity of the affiants statements made in the application. The defendants also assert that the authorities could have effected various investigative techniques such as a controlled buy from the individuals who were allegedly dealing drugs in a Wilmington night club, a physical surveillance of defendant Greg Perry's trash at his Carrcroft residence, and physical sur-

---

**2.** Similarly, the Fourth Amendment to the United States Constitution provides that "no warrants shall issue but upon probable cause ..."

**3.** *See Murphy v. Board of Pension Trustees*, Del. Supr., 442 A.2d 950, 951 (1982); *Rodney Square Investors v. Board of Assessment*, Del.Super., 448

A.2d 237, 238–9 (1982), *aff'd*, 461 A.2d 695 (1983); 2A N. Singer, Sutherland Statutory Construction § 46.06 (Sands 4th rev. ed. 1984) (effect should be given to every clause of provision).

veillance of a night spot where alleged drug dealing was occurring.

Section 1336(h)(3)(f) of the Delaware wiretap statute requires that the application for an order authorizing the interception of wire communications include a "full and complete statement as to whether or not other normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous to employ." This section mirrors the corresponding section in the federal wiretap statute, 18 U.S.C.A. § 2518(1)(c).

When reviewing the application and accompanying affidavits for compliance with these sections, "it is enough if the affidavit explains the prospective or retroactive failure of several investigative techniques that reasonably suggest themselves." *United States v. Hyde*, 574 F.2d 856, 867 (5th Cir.1978). The government's burden of establishing compliance is "not great". *United States v. Anderson*, 542 F.2d 428, 431 (7th Cir.1976); *United States v. Swan*, 545 F.Supp. at 809. Compliance is tested in a practical and common sense fashion and subject to the broad discretion of the judge to whom the wiretap application is made. *United States v. Jackson*, 549 F.2d 517, 537 (8th Cir.1977), *cert. denied*, 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977); *United States v. Cantu*, 625 F.Supp. 656, 673 (N.D.Fla.1985), *aff'd*, 791 F.2d 940 (11th Cir.1986). The purpose of the "necessity" requirement is not to foreclose electronic surveillance until "every other imaginable method of investigation has been unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in the use of conventional techniques." *United States v. Alfonso*, 552 F.2d 605, 611 (5th Cir.1977), *cert. denied*, 434 U.S. 857, 98 S.Ct. 179, 54 L.Ed.2d 129 (1977). Each case is examined on its own facts and factors to be considered are the type of crime involved and the relationships between the suspected defendants. *See e.g. United States v. Hyde*, 574 F.2d at 867 (determination made against flexible standards and examined on its own facts); *United States v. Alfano*, 838 F.2d 158, 164 (6th Cir.1988), *cert. denied*, 488 U.S. 821,

109 S.Ct. 64, 102 L.Ed.2d 42 (1988) (drug ring hard to infiltrate because close-knit family group); *United States v. Zambrana*, 841 F.2d 1320, 1330–31 (7th Cir.1988) (close-knit family group and trusted friends); *United States v. Mosko*, 654 F.Supp. 402, 412 (D.Colo.1987), *aff'd*, 890 F.2d 1461 (10th Cir.1989) (subjects extremely conscious of being watched and infiltration unlikely also because of location of house). Finally, a wiretap order should not be invalidated "simply because defense lawyers are able to suggest *post factum* some investigative technique that might have been used and was not." *United States v. Hyde*, 574 F.2d at 867; *United States v. Alonso*, 740 F.2d 862, 869 (11th Cir.1984), *cert. denied*, 469 U.S. 1166, 105 S.Ct. 928, 83 L.Ed.2d 939 (1985); *United States v. Cantu*, 625 F.Supp. at 673; *United States v. Webster*, 734 F.2d 1048, 1055 (5th Cir.1984), *cert. denied*, 469 U.S. 1073, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984).

Having stated the general principles, I now turn to the application and affidavits supporting the issuance of the orders authorizing the wire intercept of defendant Gregory Perry's home telephone. The application and supporting affidavits indicate that in 1985 and 1986 law enforcement agencies in Wilmington received numerous anonymous calls regarding an illegal drug trafficking network operating in the area, and most notably in certain bars in the west-side of Wilmington. The initial investigation targeted Jon Berger, who was frequently mentioned by the anonymous callers. In the early months of 1987, an undercover Wilmington police officer infiltrated this network which eventually led to Berger's arrest. Thereafter the drug network went underground for a period of time. The authorities in September 1988 received information from confidential informants that a "close-knit" group of longtime friends—"jet setters"—were distributing significant amounts of cocaine in certain west-side bars, and in particular "Kid Shelleens". One informant stated that the drugs, particularly cocaine, were being distributed only to people already established in the "network" for their use and for

resale to other persons. The affiants stated that the confidential informants, one of whom was very familiar with this group, were unwilling to testify in court and refused to directly participate in purchasing drugs for the police for fear of their own safety. The affiants also indicated that the use of informants and undercover police buys in the Berger investigation was not sufficient to and in fact did not expose the full scope of the drug conspiracy and the identities of those involved.

Reviewing the application in its entirety, and testing it in a practical and common sense fashion, I find the following: This drug network was comprised of close-knit friends engaging in a wide-range conspiracy. The affidavit indicates that the authorities had used and were using informants, but that the full scope of the enterprise could not be exposed without a wiretap because the informants were not willing to buy drugs nor testify in court, against at least for one informant, friends. In addition, infiltration into the group became even more difficult after one of the group, Jon Berger, was arrested. In short, the authorities, at the time of the application, informed Judge Bifferato of the difficulties involved in using conventional techniques and how these techniques had failed or were likely to fail and were thus impractical under the circumstances. *See United States v. Hyde*, 574 F.2d at 867.[4]

■ Having stated the above, I am satisfied that the State has established the "necessity" for a wiretap, i.e., the State has established that "normal" investigative techniques had failed or were likely to fail or too dangerous to employ. I am also mindful that I must pay "great deference" to Judge Bifferato in this determination. *Jensen v. State*, Del.Supr., 482 A.2d 105, 111 (1984) (determination of probable cause by issuing Judge "will be paid great deference by a reviewing court and will not be invalidated by a hypertechnical" interpretation) (citations omitted); *see also United States v. Zambrana*, 841 F.2d 1320, 1330

(7th Cir.1988) *quoting United States v. Brown*, 761 F.2d 1272 (9th Cir.1985) (in wiretap context court gives "substantial deference to the determination of the issuing judge"); *United States v. Leisure*, 844 F.2d 1347, 1354–55 (8th Cir.1988), *cert. denied*, 488 U.S. 932, 109 S.Ct. 324, 102 L.Ed.2d 342 (1988).

Finally defense counsel's mere suggestions *post factum* of other investigative techniques that might have been used is not enough to invalidate the intercept order in this case.

*3) Does the order particularly describe the communications sought, and thus, meet the specificity requirement of a search warrant?*

■ I am satisfied the answer is yes.

The defendants next assert that the wire intercept order in this case is unconstitutionally invalid because it is a general search warrant. The defendants argue that the order constitutes a general search warrant because it does not particularly specify what conversations, and the nature of conversations subject to interception. The defendants maintain therefore that the authorities could seize virtually "each and every conversation without limitation."

In *Berger v. New York*, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967), the Supreme Court of the United States held that an authorization to electronically intercept conversations must meet the Fourth Amendment's requirement that a warrant particularly describe the place to be searched and the thing to be seized. The Court held the New York eavesdrop statute unconstitutional because the statute authorized the issuance of a warrant without either particularly describing the offense that "has been or is being committed" nor the conversations to be seized. *Id.* at 55–59, 87 S.Ct. at 1881–83. The Court opined that the failure of the statute to require a particular description of the conversations sought gave the officer a "roving commission to seize any and all conversations ..."

---

4. I note also that the District Court of Delaware reached the same conclusion with respect to an affidavit that is remarkably similar to the one involved in the case *sub judice*. *See United States v. Swan*, 545 F.Supp. at 808–10.

*Id.* at 59, 87 S.Ct. at 1885. *See also Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

Congress's response to this requirement for particularity is reflected in certain provisions of Title III. *See* S.Rep. 1097, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Admin.News 2112, 2153, 2190–91; *United States v. Dorfman,* 542 F.Supp. 345, 385 (N.D.Ill.1982), *aff'd sub nom., United States v. Williams,* 737 F.2d 594 (7th Cir.1984). Thus, Title III, and its state analogues, require that every application detail the particular offense under investigation, the nature and location of the facilities to be intercepted, and the persons known to be committing the offense, 18 U.S.C.A. § 2518(1)(b)(i)(ii), 11 *Del.C.* § 1336(h)(3). In addition, "a particular description of the type of communication sought to be intercepted, and a statement of the particular offense to which it relates" must be part of the order, 18 U.S.C.A. § 2518(4)(c) and 11 *Del.C.* § 1336(k)(4). These statutory requirements, along with the minimization requirement, if complied with, satisfy the particularity requirements of the Fourth Amendment in the context of electronic surveillance. *United States v. Dorfman,* 542 F.Supp. at 385; *see also United States v. Licavoli,* 604 F.2d 613, 620 (9th Cir.1979), *cert. denied,* 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980); *United States v. Tortorello,* 480 F.2d 764, 779–80 (2d Cir. 1973), *cert. denied,* 414 U.S. 866, 94 S.Ct. 63, 38 L.Ed.2d 86 (1973); *United States v. Cafero,* 473 F.2d 489, 493–501 (3d Cir.1973), *cert. denied,* 417 U.S. 918, 94 S.Ct. 2622, 41 L.Ed.2d 223 (1974).

In interpreting the order in this case, I am guided by the principle that I must apply a "common sense" reading of the language taken as a whole and am to avoid "hypertechnical" interpretations. *United States v. Dorfman,* 542 F.Supp. at 386, *citing United States v. Ventresca,* 380 U.S. 102, 108–09, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). In addition, I note that electronic surveillance, "by its very nature" involves difficulties in identifying the conversations to be seized. *United States v. Dorfman,* 542 F.Supp. at 386. The second

circuit recognized the problems associated with the particularity requirement in the electronic surveillance context in *United States v. Tortorello,* where the court stated:

a pragmatic approach has been taken with respect to the particularity requirement. A specific crime or a specific series of related crimes must be identified. Although the nature and type of the anticipated conversations must be described, the actual content need not and cannot be stated since the conversations have not yet taken place at the time the application is made and it is virtually impossible for an applicant to predict exactly what will be said concerning a specific crime.

480 F.2d at 780.

Presented with these problems, a number of courts have held that one of the principal methods to insure particularity is simply to describe the alleged offenses to which the interceptions must relate. *See e.g. United States v. Dorfman,* 542 F.Supp. at 387 (where alleged offense is "set out with sufficient detail and the authorization permits interception of any conversation relating to that offense, [Title III] and the Constitution are satisfied"); *United States v. Leta,* 332 F.Supp. 1357, 1359–60 (M.D.Pa.1971) (order authorizing the intercept of "interstate transmission of bets and wagers, together with line information" satisfied particularity requirements). A similar result was reached in *United States v. Carneiro,* 861 F.2d 1171, 1179 (9th Cir.1988) where the court of appeals held that a wiretap order which "identified the telephone line to be tapped and specifically identified the offenses that the DEA was investigating" met the particularity requirements of Title III. In addition, the court stated that the order, alleging the distribution of "controlled substance" offenses was not overly broad and encompassed marijuana even though cocaine was targeted. *Id. See also United States v. Donovan,* 429 U.S. 413, 427 n. 15, 97 S.Ct. 658, 668 n. 15, 50 L.Ed.2d 652 (1977) (particularity requirement satisfied by "identification of the telephone line to

be tapped and the particular conversation to be seized").

Applying the foregoing to the matter *sub judice,* the initial intercept order provides: "IT IS ORDERED ... that authority ... is granted to intercept the wire communications of ... Gregory Perry ... and other known and unknown persons engaging in the commission of offenses, specified in the *previous paragraphs of this Order ...*" (emphasis added). The "previous paragraphs" of the order specifically state that the defendants are or were committing offenses "in violation of the Del. Criminal Code, Title 16, Sections 4753(A), 4751(A), 4755(A)(5); in that Trafficking in illegal narcotics, delivery and possession with intent to deliver Schedule I and II narcotic controlled substances, and in violation of ... Title 11, § 512 ... felonious conspiracy ..." The order further states that the home telephone facilities, at a specified number, have been and would be used in connection with the commission of the stated offenses and the evidence of these offenses would be obtained through the interception of oral communications made through that telephone facility.

In sum, the order particularly and specifically describes the phone to be tapped (the home telephone of Gregory Perry) and the offenses and communications that are to be intercepted. The defendants contention that the order authorized interception without limitation is simply without merit. Cases cited in defendants brief, all involving essentially limitless orders are therefore inapposite. *See People v. Sturgis,* N.Y.Supr., 76 Misc.2d 1053, 352 N.Y.S.2d 942 (1973) ("any and all" communications not particular enough); *United States v. Vega,* 52 F.R.D. 503 (E.D.N.Y.1971) (same); *State v. Pottle,* 296 Or. 274, 677 P.2d 1 (1984) (same); *State v. Farha,* 218 Kan. 394, 544 P.2d 341 (1975) (same); *cf. State v. Sitko,* RI Supr., 460 A.2d 1 (1983) (incorporation by reference to *application* prohibited in part by RI constitution and state wiretap statute).

The conclusion that the order in this case is sufficiently particular is buttressed by the fact that the order required minimization of nonrelevant calls, thus further limiting the authorities interception. *See United States v. Dorfman,* 542 F.Supp. at 388 (particularity requirement of Fourth Amendment is also addressed by statutory command to minimize); *United States v. Clerkley,* 556 F.2d 709, 715–16 (4th Cir. 1977), *cert. denied,* 436 U.S. 930, 98 S.Ct. 2830, 56 L.Ed.2d 775 (1978).

4) *(a) Is the Delaware wiretap statute invalid because it does not require minimization? (b) Were conversations properly minimized in this case?*

I am satisfied that the answers are no and yes respectively.

The defendants arguments concerning minimization are two-fold. First, the defendants maintain that § 1336(k) of the Delaware wiretap statute which includes language that a wire intercept "may" be conducted in such a manner as to minimize nonrelevant calls is unconstitutional in that it is more permissive than the federal wiretap statute, which provides that authorities "shall" minimize such calls, 18 U.S.C.A. § 2518(5). The second argument is essentially that the State in this case failed to properly minimize certain categories of nonrelevant calls.

### a) *"May" v. "Shall" Minimize*

The defendants correctly point out that 11 *Del.C.* § 1336(k) does not affirmatively require minimization whereas 18 U.S.C.A. § 2518(5) does. Section 1336(k) reads in pertinent part: "Every order entered under this section shall require that such interception begin and terminate as soon as practicable and *may* be conducted in such a manner as to minimize or eliminate the interception of such communications not otherwise subject to interception under this section" (emphasis added). Title III, Section 2518(5), on the other hand, provides that "[e]very order ... *shall* be conducted in such a way as to minimize the interception of communications not otherwise subject to interception ..." (emphasis added). The defendants argue the federal language preempts the more permissive Delaware statutory language, and thus renders the

latter unconstitutional, and requires suppression of the wiretap evidence in this case. I do not agree.

 It is axiomatic that a party has standing to challenge the constitutionality of a statute only insofar as it has a substantial and adverse affect on his own rights. *See County Court of Ulster v. Allen,* 442 U.S. 140, 154–155, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979); *State ex rel. Smith v. 16.50, 10.04629, 3.34, 1.84, 5.97741, 3.94 & 7.49319 Acres of Land,* Del.Super., 200 A.2d 241, *aff'd in part and modified in part,* 208 A.2d 55 (1964) (party has no standing to challenge constitutionality of statute when a right of his is not affected thereby). While 11 *Del.C.* § 1336(k) appears to be arguably more permissive than its federal counterpart, the precise language of the statute has no adverse impact on the defendants in this case since the order in fact required minimization. The order provides that "said interception *shall* be conducted in such a manner so as to minimize or eliminate the interception of said communications not otherwise subject to ... interception" (emphasis added). Thus, the authorities in this matter were ordered to minimize, and therefore the defendants cannot attack the arguably more permissive language of § 1336 since it essentially does not apply to them. *Id.*

This conclusion is supported by numerous federal court rulings interpreting the federal wiretap statute, to the effect that suppression may not be required even if the minimization provision is nowhere included in the order. *See e.g. United States v. Cirillo,* 499 F.2d 872, 878–80 (2d Cir. 1974), *cert. denied,* 419 U.S. 1056, 95 S.Ct. 638, 42 L.Ed.2d 653 (1974); *United States v. Vento,* 533 F.2d 838, 861 (3d Cir.1976); *United States v. Dorfman,* 542 F.Supp. at 388 ("[t]here is considerable doubt whether any minimization directive is required in the order under the [federal] statute or Constitution") (citations omitted); *see infra* discussion at pages 772–774 of this opinion.

Having stated the above, I decline to decide the constitutionality of 11 *Del.C.* § 1336(k) since it does not directly apply to

the defendants nor affect their rights in this case.

### b) *Minimization in This Case*

The defendants next challenge the State's substantive efforts to minimize nonrelevant conversations. The defendants essentially maintain that the authorities failed to minimize five separate categories of nonrelevant calls. In support of their contentions in this regard, the defendants have filed five transcripts of conversations with accompanying affidavits and five color-or-coded calendars with affidavits that correspond to the five categories of nonpertinent calls. The five categories are: (1) conversations between Greg Perry and his father and/or sister; (2) conversations between Gregory Perry and his lady friend Kare Sullivan; (3) conversations between Greg Perry regarding his employ at Amertex; (4) conversations between Greg Perry and a variety of miscellaneous people—non-friends; (5) conversations between Greg Perry and "personal" friends. The record also includes the daily electronic surveillance logs compiled by the Wilmington Police Department. The logs essentially digest the calls intercepted and indicate which calls were minimized. In addition, the record contains the affidavits of Ronald Houston, Captain of the Wilmington Police Department, and Richard J. Sexton, Department of Justice, all concerning minimization.

 Minimization has been described as the government's obligation to reduce to the extent possible interception of conversations which are not the subject of the court order authorizing such interception. *United States v. Dorfman,* 542 F.Supp. at 390. The Supreme Court of the United States in *Scott v. United States,* 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978) ruled that to determine compliance with a minimization order a court must address the "reasonableness" of the interceptor's conduct in the context of the entire wiretap. *Id.* at 138–40, 98 S.Ct. at 1723–25. This determination is "ad hoc" depending on the facts and circumstances of the particular investigation. *Id.* at 139, 98 S.Ct. at

1724. Title III does "not forbid the interception of all nonrelevant conversations, but rather instructs the agents to conduct the surveillance in such a manner as to 'minimize' the interception of such conversations." *Id.* at 140, 98 S.Ct. at 1724. In addition, I recognize the principle that if government authorities learn from the interception of calls that there is a "pattern" of innocent conversations, the authorities should cease listening to calls falling into that pattern for the remainder of the tap. *See United States v. Quintana,* 508 F.2d 867, 874 (7th Cir.1975); *United States v. Hoffman,* 832 F.2d 1299, 1308 (1st Cir. 1987); *Scott v. United States,* 436 U.S. at 141, 98 S.Ct. at 1725 (interception of nonpertinent calls might be unreasonable "once the nonpertinent categories have been established and it is clear that this particular conversation is of that type").

■ Whether the government agents minimization efforts were reasonable under the circumstances depends on a number of factors, including the nature and scope of the criminal enterprise under investigation, the government's reasonable expectation of the character of the conversations to be intercepted, and the extent of judicial supervision over the surveillance. *United States v. Hyde,* 574 F.2d 856, 869–70 (5th Cir.1978); *United States v. Clerkley,* 556 F.2d 709, 716 (4th Cir.1977); *see also State v. Vouras,* Del.Super., 351 A.2d 869, 874–76 (1976).

■ Applying the foregoing to the instant case and having considered all of the filed material, I am satisfied that the wiretap, considered as a whole, was reasonable under the circumstances. Surveillance of one category of calls, namely those calls between Gregory Perry and his lady friend, Kare Sullivan, however, were not properly minimized and therefore will be suppressed.

The authorities in this case were investigating a fairly widespread cocaine conspiracy. As stated earlier, the conspiracy involved a close-knit group of mainly friends and associates. The objective of the wiretap was to determine the full scope of the drug distribution conspiracy. Generally, large narcotic conspiracies "may justify considerably more interception than would a single criminal episode." *United States v. Quintana,* 508 F.2d at 874; *see also United States v. Hoffman,* 832 F.2d at 1308 (in narcotics conspiracy "the need to allow latitude to eavesdroppers is close to its zenith"); *United States v. Cantu,* 625 F.Supp. at 676 (in widespread conspiracy it is appropriate for agents to monitor calls more extensively). This is especially so where the purpose of the wiretap is to learn the identities of the "far-flung" conspirators and to delineate the scope of the conspiracy. *United States v. Quintana,* 508 F.2d at 874; *see also United States v. James,* 494 F.2d 1007, 1019 (D.C.Cir.1974).

In addition, the defendants in this case often spoke in jargon and coded language. Cocaine was often referred to as an "eighth" or "eight ball" or as "Flyers tickets". *See* Affidavit of Officer James Nolan at paragraph 8. In general, the use of this type of coded language necessitates more extensive monitoring of conversations. *See United States v. Cantu,* 625 F.Supp. at 676 (conversants use of code words for narcotics such as "eight ball" and "white puppies" necessitated more extensive monitoring); *United States v. Hoffman,* 832 F.2d at 1308 ("[w]hen the opposition speaks in tongues, there is greater need to listen longer and more closely to conversations which may seem innocuous at first"); *United States v. James,* 494 F.2d at 1019; *United States v. Garcia,* 785 F.2d 214, 224 (8th Cir.1986), *cert. denied,* 475 U.S. 1143, 106 S.Ct. 1797, 90 L.Ed.2d 342 (1986) (factor to determine whether government properly minimized calls is whether the callers used ambiguous or coded language); *United States v. Scott,* 516 F.2d 751, 758 (D.C.Cir.1975) (same); *United States v. Paredes–Moya,* 722 F.Supp. 1402, 1411 (N.D.Tex.1989) (when government believes participants are using codes to communicate, government can justifiably intercept a broader range of conversations). Moreover, and perhaps more importantly, the telephone in this case was equipped with a call-waiting feature. *See* Initial Application of Perry Intercept. For this reason

calls that were not pertinent at their inception were capable of being switched to highly pertinent calls from other parties without the knowledge of the monitoring officer. Thus, the monitoring officers would have to listen for a longer time to determine if the conversation had changed. *See* Affidavit of Ronald Houston. The Supreme Court of Delaware in *Gibbs v. State*, Del.Supr., 479 A.2d 266, 271 (1984) affirmed a Superior Court judge's ruling that minimization was reasonable based in part on the fact that the interceptees used coded language through a phone that contained a call-waiting feature.

In addition, I am mindful every monitoring agent in this case was briefed on the importance of minimizing nonpertinent calls, and a memorandum containing instructions on minimization, prepared by a deputy attorney general, was read by the agents and posted in the monitoring room. Affidavit of Ronald Houston. This memorandum outlines the procedures to be followed regarding minimization, including categories of conversations and operation of the recording equipment. These procedures strongly suggest the reasonableness of the State's minimization efforts. *United States v. Cantu*, 625 F.Supp. at 675–76 (monitoring agents attended briefing on minimization and read memorandum on minimization—indicating reasonableness); *United States v. Dorfman*, 542 F.Supp. at 391–92 (agents given instructions on minimization at conference prior to intercept and given memorandum from strike force attorney outlining minimization procedures—all indicated reasonableness); *United States, v. Santoro*, 647 F.Supp. 153, 161 (E.D.N.Y.1986), *aff'd*, 880 F.2d 1319 (2d Cir.1989) (U.S. attorney and DEA supervisor instructed monitoring agents on legal requirements of wiretap, including minimization).

The defendants have asserted that in five categories of calls a pattern of innocence had developed which required the authorities to cease monitoring in those catego-ries. With respect to four categories,[5] I do not agree.

During the 47 days that the Perry intercept was in place, there were a total of 550 telephonic calls, of two minutes duration or longer, that were intercepted. There were 59 calls that related to business and 18 of those were minimized. A total of 25 family-business calls were intercepted and 14 of those were minimized. *See* Affidavit of Richard Sexton. These figures are basically consistent with the charts prepared by the defendants. For example, the defendants list 44 calls made between Greg Perry and his sister and father. Of those calls, 13 were minimized. I am satisfied that the government's efforts at minimization in these categories were reasonable. *See Scott v. United States*, 436 U.S. at 140, 98 S.Ct. at 1724 (percentage of nonpertinent calls was relatively high yet their interception was reasonable); *see also United States v. Quintana*, 508 F.2d at 873 (list of cases finding minimization reasonable even though there was an uninterrupted interception of all calls); *see e.g. United States v. James*, 494 F.2d at 1018.

Having stated the above and based on the factors outlined above, namely the conspiracy among friends and associates, the use of coded language, and the call-waiting feature, I am satisfied that the agents minimization efforts were reasonable.

With regard to the calls between Greg Perry and his lady friend, Kare Sullivan, I am satisfied that the authorities did not properly minimize. A review of the exhibits submitted by the defendants and the wire logs submitted by the State indicates that an actual pattern of innocence had developed with regard to these calls. These 58 calls were uniformly innocent. The calls were about subjects commonly discussed by male and female friends, for example movies, dates, and a new business venture for Kare. A number of the conversations concerned a certain dog "Cleopatra" that both Greg and Kare apparently share. Out of the 58 calls, only one (1) was

---

**5.** Calls related to Greg Perry's job at Amertex; Conversations between Greg Perry and/or his father and sister; Conversations with "personal" friends; and conversations with miscellaneous people.

minimized. I am satisfied, even in light of the factors outlined above, that these 58 calls were purely personal and not related to the criminality under investigation, and should therefore be suppressed.

While I have concluded that these calls should be suppressed, I am satisfied that there was no "taint" upon the interception as a whole to warrant suppression of all the wiretap evidence. *United States v. Hoffman,* 832 F.2d at 1307. As stated earlier, the state's overall good faith efforts at minimization were reasonable.

5) *Is the order in this case invalid because it did not include a termination upon attainment of objective provision?*

 I am satisfied that the answer is no.

The defendants finally challenge the facial sufficiency of Judge Bifferato's order authorizing the wire intercept, asserting that the order is invalid because it failed to include a provision mandating the termination of the interception upon the attainment of the authorized objective as required by 11 *Del.C.* § 1336(k)(6) and 18 U.S.C.A. § 2518(5).[6] The State concedes that this language was not included in the order. The question is whether the technical defect in the order requires suppression of the wiretap evidence? I am satisfied that the answer is no.

The defendants have cited a number of cases wherein courts have required strict and literal compliance with the provisions of wiretap statutes. In *State v. Bailey,* App., 289 Md. 143, 422 A.2d 1021 (1980) the intercept order failed to include a directive to terminate the intercept upon attainment of the authorized objective as required by the Maryland wiretap statute. The Court of Appeals held that the failure to include this provision was fatal because in Mary-

land the order must strictly comply with the statutory provisions. *Id.* 422 A.2d at 1026–27. The court quoted Section 10–408(i)(1)(ii) of the Maryland code which provides that "[a]ny aggrieved person ... may move to suppress ... on the grounds that ... (ii) the order of authorization under which it was intercepted is insufficient on its face, or was not obtained or issued in *strict* compliance with this subtitle ..." (emphasis in original). *Id.* The court commented: "[t]he language is unequivocal, leaving no room to doubt that the legislature intended that the wiretap order conform scrupulously to the mandate of the statute." *Id.* at 1027. The court affirmed the lower court's suppression based on the order's failure to strictly comply with the statute. *See also State v. Siegel,* App., 266 Md. 256, 292 A.2d 86, 95 (1972) (Title III sets up a strict procedure that must be followed); *Poore v. State,* 39 Md.App. 44, 384 A.2d 103, 106 (1978) (same); *cf. Spease v. State,* App., 275 Md. 88, 338 A.2d 284 (1975) (post order compliance judged by more lenient substantial compliance standard).

Similarly in *State v. Pottle,* 296 Or. 274, 677 P.2d 1 (1984) the Supreme Court of Oregon affirmed suppression where the order contained no provision that it be executed as soon as possible, that the officers minimize nonpertinent calls, nor an "automatic termination" upon achieving its objective provision. Importantly, the order specifically directed that interception of "every communication that came over the wire" continue even after the objective was attained. *Id.* 677 P.2d at 9. Under these circumstances the court held that "strict adherence" to the statute was the correct standard but reserved for "another day" the question of whether a "minor shortcoming" in drafting that had "no conse-

---

**6.** 11 *Del.C.* § 1336(k)(6) in pertinent part reads: "No order entered under this section shall authorize the interception of any wire or oral communication for a period of time longer than is necessary to achieve the objective of the authorization, nor in any event longer than 30 days ... In no case shall an order ... authorize the interception ... beyond the attainment of the authorized objective ..." 18 U.S.C.A. § 2518(5) in pertinent part reads:

"No order entered under this section may authorize or approve the interception of any wire, oral, or electronic communication for any period longer than is necessary to achieve the objective of the authorization, nor in any event longer than thirty days ... Every order shall contain a provision that the authorization to intercept ... shall terminate upon attainment of the authorized objective ..."

quence in the actual execution of the order" would require suppression. *Id.* at 10. *See also State v. Maloof,* 114 R.I. 380, 333 A.2d 676, 680 (1975) (order that affirmatively stated that it "need *not* terminate" upon attainment of objective insufficient on its face); *State v. Farha,* 218 Kan. 394, 544 P.2d 341 (1975) (state wiretap statute that did not have provisions consistent with Title III required suppression).

In the above cited cases, a strict compliance standard was adopted by the respective courts, either because a state statute demanded strict compliance, or the intercept, based on the court's interpretation of its statute, was unlawful. There is however another line of cases, which in my view represents the majority, that does not require suppression for technical noncompliance with a wiretap statute. Indeed, this court has apparently joined in this line of cases.

The precise issue of whether the failure to include a termination upon attainment of the objective provision in a wiretap order required suppression was decided by the United States Court of Appeals for the Third Circuit in *United States v. Cafero,* 473 F.2d 489 (3d Cir.1973). The Court stated:

> We do not read this section as providing for automatic termination upon attainment of the objective of the authorization only if a statement to this effect is included in the authorization ... Rather, we interpret Section 2518(5) as requiring automatic termination upon attainment of the objective of the authorization *irrespective of whether a statement to this effect has been included by the authorizing judge.*

*Id.* at 496 (emphasis added). *Cafero* was relied upon by this court in the case of *State v. Wilson,* Del.Super., 306 A.2d 743, 750 (1973), *aff'd,* 343 A.2d 613 (1975)[7] (em-

phasis added), when it held that the failure to include a statement that the order would automatically terminate upon attainment of its objective was not "fatal since the authorization will automatically terminate upon first obtaining the described communication, *even if such a statement is not contained in the order,* unless the judge finds probable cause to justify the continued surveillance." *See also United States v. Saliterman,* 708 F.Supp. 1055 (D.Minn.1987), *aff'd sub nom., United States v. Quinn,* 868 F.2d 999 (8th Cir.1989) (order failing to include termination upon attainment of its objective held not facially deficient).

Similarly the Second Circuit in *United States v. Cirillo,* 499 F.2d 872, 878–80 (2d Cir.1974) held that the "omission of the talismanic minimization language" does not invalidate an interception order. The court characterized the omission as a "technical defect" so long as the monitoring agents were aware of the minimization requirement and abided by it. *Id.* A similar result was reached in *United States v. Vento,* 533 F.2d 838, 861 (3d Cir.1976) where the third circuit stated that "[i]t is possible to have substantial compliance with the requirements of Title III although the minimization language has not been included in the order." The court characterized the lack of a minimization provision a "facial insufficiency," and ruled the order would not be vitiated if substantial compliance with Title III was shown. *Id.* The court concluded that if such a facial sufficiency was cured in fact, i.e., minimization procedures were in fact used, then there would be no reason to require suppression. *Id. See also United States v. Baynes,* 400 F.Supp. 285 (E.D.Pa.1975), *aff'd,* 517 F.2d 1399 (3d Cir.1975) (same); *United States v. Traitz,* 871 F.2d 368 (3d Cir.1989), *cert. denied,* 493 U.S. 821, 110 S.Ct. 78, 107

---

**7.** In *State v. Wilson* the court was interpreting 11 *Del.C.* § 757(k)(6) which was recodified as the current 11 *Del.C.* § 1336(k)(6). The defendants are correct that the current § 1336(k)(6) states that no order authorize a wire intercept "for a period of time longer than is necessary to achieve the objective of authorization," and that this language was not contained in former § 757(k)(6). It is interesting to note that

§ 1336(k)(6) does not mandatorily require that termination upon attainment language be included in the order, just that the intercept should not continue after its objective is achieved. *State v. Wilson* is still very much helpful in that it relies on *Cafero,* and *Cafero* interpreted Title III, § 2518(5) which requires such a provision.

L.Ed.2d 44 (1989) (substantial compliance with provisions of Title III even where one page of order was missing); *United States v. Van Horn*, 789 F.2d 1492 (11th Cir.1986), *cert. denied*, 479 U.S. 854, 107 S.Ct. 190, 93 L.Ed.2d 123 (1986) (suppression not mandated by inadvertent noncompliance); *United States v. Couser*, 732 F.2d 1207 (4th Cir.1984), *cert. denied*, 469 U.S. 1161, 105 S.Ct. 913, 83 L.Ed.2d 926 (1985) (suppression not required for technical violations of wiretap statute in absence of bad faith); *United States v. Acon*, 513 F.2d 513 (3d Cir.1975) (facial insufficiency cured by showing compliance in fact).

That there is a distinction between insufficiencies that are merely technical and those that are critical has been recognized by the Supreme Court of the United States. In *United States v. Chavez*, 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974) the Court stated:

> Failure to correctly report the identity of the person authorizing the [wiretap] application ... when *in fact* the Attorney General has given the required preliminary approval to submit the application, does not represent a similar failure to follow Title III's precautions against the unwarranted use of wiretapping or electronic surveillance and does not warrant the suppression of evidence gathered pursuant of a court order resting upon the application.

*Id.* at 571, 94 S.Ct. at 1854 (emphasis added). The court also noted that "[not] every failure to comply fully with any requirement provided in Title III" requires suppression. *Id.* at 574–75, 94 S.Ct. at 1856. *See also United States v. Donovan*, 429 U.S. 413, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977) (suppression not justified by Government's inadvertent omission of names from the comprehensive list of all identifiable persons whose conversations had been overheard pursuant to wiretap order).

Applying the foregoing to the facts of the instant case, and in light of *State v. Wilson*, I am satisfied that the failure of the order to contain a provision requiring the termination of the order upon attainment of its objective is a technical defect that does not require suppression of the wiretap evidence.[8] The order in this case apparently inadvertently omitted the termination upon attainment provision and instead repeated the provision that the interception "shall not automatically terminate when the first described communication shall be obtained" twice. While it is undisputed that the order did not contain a termination upon attainment of objective provision, it did clearly state that the order "shall begin and terminate as soon as practicable" and "shall *not in any event* exceed a period of thirty days." The order and accompanying affidavits also quite clearly describe the objective of the wiretap. The affidavits essentially state the objective of the wiretap was to learn "the full scope, size, and total compliment of associates" involved in this drug distribution scheme. Thus, the authorities clearly knew their objective, and the language in the order that "not in any event" would the order exceed thirty days, suggests that the authorities knew to terminate the wiretap once their stated objective was achieved.

Notwithstanding the provisions contained in the order, it appears that even though the order did not contain a termination upon attainment of objective provision, the interception did in fact terminate upon attainment of its objectives. The original wiretap started on January 9, 1989, and terminated on February 7, 1989. The defendants suggest that the objectives of the interception were achieved in late January, during the initial span of the first order, when Greg Perry first went to Pennsylvania to see Arire Shemish. The authorities, however, sought an extension of the initial 30–day period because they felt a viable prosecution could not be obtained without a seizure of a large amount of cocaine, and thus needed more wiretap evidence to help achieve their objective. The authorities simply were not able to determine the full scope of the conspiracy, in part because the conversations were sketchy and also because the conspirators

---

**8.** I note that the Delaware wiretap statute, unlike the Maryland statute considered in *State v. Bailey, et. al*, does not expressly require strict compliance. Compare 11 *Del.C.* § 1336(f).

often used coded language. Judge Bifferato, to whom I must pay great deference, essentially agreed, and finding probable cause ordered a 30–day extension of the wiretap on February 7, 1989. On February 24, 1989, half-way into the extension, Perry was arrested as he traveled back from Pennsylvania carrying a large quantity of cocaine.

## IV. CONCLUSION

Having stated the above, the defendants' application to suppress is GRANTED as it relates to the intercept between Greg Perry and Kare Sullivan, and DENIED in all other respects.

IT IS SO ORDERED.