**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**


STATE OF DELAWARE,        :
                                  :
                                  :

      v.                     :

| | | |
|---|---|---|
| MARQUIS MACK, | : | ID No. 2010012305 |
| DEVIN COLEMAN, | : | ID No. 2010012644 |
| JERMAINE HARMON, | : | ID No. 2010012620 |
| BRANDON HOLLAR, | : | ID No. 2010012756 |
| KEONTRE HYNSON, | : | ID No. 2010012722 |
| KEITH MAYE, | : | ID No. 2010012746 |
| JOSHUA SHORTS, and | : | ID No. 2010012614 |
| JARON WHITE, | : | ID No. 2010012666 |

                                  :
                                  :
           Defendants.       :


Submitted: October 1, 2021
Decided:  October 18, 2021


**OPINION AND ORDER**


*Defendants' Motion to Suppress Wiretap Evidence -* **DENIED**

*Defendants' Motion for Relief from Prejudicial Joinder* **- GRANTED, in part & DENIED, in part**

*Defendants' Motion in Limine Regarding Gang Affiliation -* **DEFERRED**

Stephen R. Welch, Jr., Deputy Attorney General, Department of Justice, Dover, Delaware, *Attorney for the State.*

Edward Gill, Esquire, Law Office of Edward C. Gill, P.A., Georgetown, Delaware, *for the Defendant Marquis Mack.*

John S. Malik, Esquire, Law Offices of John Malik, Wilmington, Delaware, for *the Defendant Devin Coleman*.

Chad Lingenfelder, Esquire, The Smith Firm, Seaford, Delaware, *for the Defendant Jermaine Harmon*.

James Liguori, Esquire, Liguori & Morris, Dover, Delaware, *for the Defendant Brandon Hollar*.

Peter Veith, Esquire, Peter W. Veith, Esq., P.A., Wilmington, Delaware, *for the Defendant Keontre Hynson*.

Alexander Funk, Esquire, Curley, Dodge, Fitzgerald, & Funk, LLC., Dover, Delaware, *for the Defendant Keith Maye*.

Andrew Witherell, Esquire, Wilmington, Delaware, *for the Defendant Joshua Shorts*.

Phillip Renzulli, Esquire, Law Office of F. Phillip Renzulli, LLC, Wilmington, Delaware, *for the Defendant Jaron White*.

**Clark, J.**

The State indicted Defendant Marquis Mack and thirty-six other defendants after a racketeering and large-scale drug trafficking investigation. With input from the parties, the Court divided the defendants into five trial groups. The first trial is scheduled for October 25, 2021.

The indictment contains one hundred and fifty-one counts. Mr. Mack faces trial in eighty-eight of those counts. His charges include, *inter alia*, racketeering, conspiracy, solicitation to commit murder, drug dealing, and weapons offenses.

This decision addresses Mr. Mack's three pretrial motions. First, he seeks to suppress evidence seized during several wiretaps. Specifically, he contends that the affidavits of probable cause that support the wiretap warrants did not demonstrate their necessity. Second, he alleges that if the Court does not sever the eighty-eight counts into separate trials, it will unfairly prejudice him. He requests thirty-nine separate trials. Third, he moves *in limine* to bar evidence or argument from trial regarding his alleged membership in the Bloods street gang.

Six of Mr. Mack's co-defendants seek to join his motion to suppress.[1] None made their own substantive arguments. Rather, they rely on his arguments that focus only on the necessity of the wiretaps as to him. One defendant, Joshua Shorts, also seeks to join Mr. Mack's motion to sever. Furthermore, two of Mr. Mack's co-defendants seek to join his motion *in limine* to bar references to their alleged membership in the Bloods street gang.[2] These requests to join the three motions are granted, without opposition of the State.

---

[1] The Defendants that join Mr. Mack's motion to suppress include Devin Coleman, Jaron White, Joshua Shorts, Keith Maye, Keontre Hynson, and Brandon Hollar. They raise no substantive arguments; rather, they simply seek to join Mr. Mack's motion.

[2] Defendants Joshua Shorts and Devin Coleman moved to join this motion.

For the reasons discussed below, the probable cause affidavits submitted to support the wiretaps demonstrated their necessity to the issuing judge. As a result, the motion to suppress must be denied. Furthermore, with one exception, Mr. Mack's motion to sever must be denied because the predicate offenses charged in the indictment are inextricably intertwined with the racketeering charge. Finally, the Court defers its decision regarding the motion *in limine* regarding alleged gang affiliation. Pending the Court's decision, the State shall offer no such evidence before it raises the issue outside the presence of the jury.

## I.    Factual and Procedural Background

The factual background for these motions comes from three sources. For the suppression motion, the Court considers only the four-corners of the affidavit of probable cause submitted for one warrant (the "6251 Affidavit" or the "Affidavit").[3] During the investigation, the issuing judge authorized wiretaps of seven lines. The parties, however, stipulate that the facts regarding necessity recited in the 6251 Affidavit mirror those that support the necessity of the other six wiretaps. In fact, the only affidavit Mr. Mack and the State provided to the Court was the one authorizing the wiretap of the 6251 line. The parties agree that if that warrant is sufficient as to the necessity of a wiretap of line 6251, it is sufficient as to all. If insufficient, it is insufficient as to all.

The relevant background for the motion for relief from prejudicial joinder (or "motion to sever") comes from two sources: the indictment and the State's response to Mr. Mack's motion for bill of particulars. At oral argument, the parties stipulated that the Court should consider the bill of particulars when deciding the motion. The

---

[3] The Court designates it as such because it is the last four digits of the tapped phone number.

State's bill of particulars incorporates forty-three police reports by reference. As a result, the Court also considers those reports.

Third and finally, the Court considers the State's proffer regarding gang affiliation when it considers the motion *in limine*. At this stage, the State is the proponent of the evidence but has not identified how it would seek to prove gang affiliation. It must do so before the Court performs a Delaware Rule of Evidence 403 balancing. Furthermore, the Court must also consider Mr. Mack, Mr. Coleman, and Mr. Shorts' arguments regarding the degree of unfair prejudice that would arise from such evidence.[4]

#### A. The Facts Recited in the Affidavit in Support of the 6251 Warrant

Two Dover Police detectives and one Delaware State Police detective submitted an affidavit and application for the 6251 wiretap on June 24, 2020. The issuing judge signed it on that day. He later signed six other wiretap orders.

The affiants recited that members of Bloods gang "sets" committed many serious crimes in Dover beginning in 2017.[5] Included in those crimes were murders and shootings. The members of those sets also committed various weapons offenses, drug distribution and trafficking offenses, and assaults. The Affidavit identified those crimes and the alleged perpetrators with particularity.

During June 2019, through confidential informants, a joint task force began orchestrating various drug buys. According to the Affidavit, at that point, the investigators learned from multiple confidential sources that Mr. Mack was a high-ranking member of the Bloods street gang. They also learned that Mr. Mack and

---

[4] Mr. Short sought only to join the motion and provided no additional substantive argument.
[5] According to the Affidavit, the Bloods Street gang consists of many smaller groups, or sets, including but not limited to the MOB Piru set, the G-Shyne set, the 48 set, and the Sex Money Murder set.

5

other members of the Bloods gang supplied the drugs for those sales. The confidential sources also identified other high-ranking members of the organization. By the time of the 6251-warrant application, the task force had confirmed that Mr. Mack participated in the organization because he participated in controlled buys.

The controlled buys, however, involved only a series of transactions. That and other evidence supported the existence of a criminal enterprise, but more evidence was necessary to prove its scope. The affiants recited the following purpose when requesting the 6521 wiretap:

> [t]here is no likely prospect that lesser measures will enable law enforcement to gather evidence implicating the higher-ranking members of the Bloods street gang. Neither can lesser measures be expected to develop evidence sufficient to disable the operations of the Bloods street gang itself . . . Only by intercepting wire and oral communications to and from Marquis MACK . . . will Affiants have an opportunity to interrupt significantly the trafficking of MDA from Bloods street gang members in Atlanta [and] have an opportunity to discover the hierarchy of the Bloods street gang in Delaware and gather evidence sufficient to bring the higher-ranking members of the street gang to justice.[6]

In other words, the task force sought to infiltrate and prosecute the leadership of the enterprise rather than to arrest, piecemeal, those who performed separate drug deals.

The Affidavit further described the Bloods gang as a criminal enterprise that is "distinctively compartmentalized."[7] That compartmentalization and the enterprise's practices made it impossible to infiltrate. In further support of the necessity for the wiretap, the Affidavit describes Mr. Mack's and other high-ranking members' efforts to thwart the investigation.[8] Mr. Mack, for one, conducted evasive

---

[6] State's Resp. to Mot. to Supp. Ex. 1 (hereinafter "6251 Aff.") at 1.
[7] 6251 Aff. at 4.
[8] *Id.* at 4.

maneuvers when the task force members attempted to follow him.[9]  The task force also orchestrated drug buys through confidential informants.   The task force also obtained pen register warrants to determine who called whom and GPS warrants to further develop who Mr. Mack met during relevant time frames.   Those means provided some information.  However, the evidence proved insufficient to prosecute the organization's leadership.

During the investigation, confidential informants told the task force members that Mr. Mack participated in larger sales.   The Affidavit also provided other significant evidence supporting probable cause.  In recognition of that, Mr. Mack concedes that the Affidavit recites facts that provided probable cause to tap the seven phone lines.

Regarding the contested issue of necessity, the Affidavit further explains why the task force's investigatory methods were insufficient to meet the investigation's goals --  that is, to target the larger organization and its leadership, including Mr. Mack.  The Affidavit explained, in significant detail,  the difficulties inherent in investigating the leadership of large drug trafficking organizations and street gangs such as the Bloods gang.

The Affidavit also provided case-specific observations regarding necessity. For instance, it described the task force's difficulties when it attempted to surveil Mr. Mack because he used surveillance "countermeasures."[10]   It further described the difficulties involved in surveilling him and others in the organization because of where they conducted their drug dealing.[11]   Specific to Mr. Mack, those locations that made surveillance difficult or impossible included Capitol Green, Liberty Court

---

[9] *Id.* at 32, ⁋ 60.
[10] *Id.* at 53.
[11] *Id.*

7

Apartments, and Manchester Square Apartments in Dover.[12]  The Affidavit explained that many residents in those three communities harbored suspicions regarding law enforcement[13]  It also described the physical structure of those three Dover apartment complexes, e.g. one way in and one way out, and how the communities' structures made effective surveillance very difficult or impossible.[14]

The Affidavit also describes the task force's efforts to use pole cameras to observe Mr. Mack's residence.[15]  The cameras provided little useful information. Likewise, the affiants described an attempted trash pull from Mr. Mack's residence and explained its ineffectiveness.  The task force could not determine what trash corresponded with what home because he lived in a row home.[16]

The Affidavit made other observations specific to Mr. Mack and the Bloods organization.   For instance, the affiants recite that Mr. Mack and the Bloods used low-level distributors to perform many of the drug sales.  As a result, the task force was unable to gain information about the organization's scope and operation without the wiretaps.[17]   The affiants further explained that merely arresting Mr. Mack or his co-defendants for a series of drug sales without obtaining evidence of the organization's structure and operations would not meet the investigation's purpose.[18]

Finally, the Affidavit explained why using attorney general subpoenas and suspect interviews would not work because of the closely-held nature of the organization.[19]   Namely, undercover officers had not infiltrated the inner workings of the organization because of its close and secretive nature.[20]   While confidential

---

[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.* at 55.
[16] *Id.* at 56.
[17] *Id.*
[18] *Id.* at 55.
[19] *Id.* at 57-58.
[20] *Id.*

8

informants provided information to establish probable cause prior to June 2020, the Affidavit explained why the State could not use that information to prosecute the case against the larger organization or its leaders, such as Mr. Mack.[21]

## B. The Indictment and Bill of Particulars

Count 1 of the indictment alleges racketeering. That Count alleges that Mr. Mack, Mr. Shorts, and other named defendants engaged in a pattern of racketeering activity between June 30 and September 10, 2020.[22] Other indicted offenses include drug dealing, conspiracy, criminal solicitation, and weapons possession.

Upon Mr. Mack's motion to dismiss the case, the State filed a corrected bill of particulars.[23] In it, it referenced forty-three police reports and linked those reports to the individual counts that involved Mr. Mack.[24] Thirty-eight of the forty-three reports reference the wiretaps. Many quote conversations or texts between Mr. Mack and others and refer to drug sales, supply, and drug distribution. The police reports, the bill of particulars that incorporates them, and the indictment reference only criminal conduct that occurred *after* the issuing judge issued the 6251-wiretap order.

Furthermore, the thirty-eight reports that refer to the wiretaps also refer to the content of the intercepted communications. If facts recited in the reports are true, they provide significant evidence of Mr. Mack's efforts to secure drugs and distribute them. They also demonstrate, in part, who Mr. Mack secured the drugs from, how he distributed them to those below him in the organization, and other actions he took in furtherance of the ongoing enterprise.

---

[21] *Id.* at 60-61.
[22] Indictment, Count I (Apr. 5, 2021).
[23] Docket Entries 66 & 67.
[24] *Id.*

Mr. Mack's motion to sever also focuses narrowly on two alleged transactions included in the indictment. The first transaction involves Counts 54, 55, and 56. Those charges alleged that Mr. Mack possessed two firearms and firearm ammunition as a prohibited person. The State alleges he was a person prohibited due to a prior violent felony conviction from March 2009. It further alleges that Mr. Mack purchased the two semi-automatic firearms and ammunition for his co-defendant, Devin Coleman.

The second more narrow transaction is Count 133 in the indictment: criminal solicitation first degree. That count alleges that Mr. Mack solicited co-defendant Bashan McIvor to commit murder. Through the State's bill of particulars, it identifies a particular conversation between Mr. Mack and Mr. McIvor where Mr. Mack requested that Mr. McIvor shoot and kill a rival. In tying the matters together, Count 1 of the indictment alleges that Mr. McIvor participated in the same pattern of racketeering activity as Mr. Mack.

### C. Background Regarding the Motion to Preclude References to Gang Activity

The State charges Mr. Mack with racketeering.[25] That is, the State alleges that he participated in a joint enterprise that engaged in a pattern of racketeering activity. Through its written submission, the State proffers that Mr. Mack is a member of the Bloods street gang. Furthermore, it proffers that the Bloods gang, of which he is a member, is organized for the purposes of committing criminal activity. It is that gang's alleged leaders that are central to the racketeering charge. The 6251 Affidavit structures the entire investigation around the premise that various sets of the Bloods gang comprise the enterprise that conducted racketeering activities.

---

[25] The State also alleges that Mr. Coleman and Mr. Short, who join the motion *in limine,* engaged in the same pattern of racketeering activity, in the same enterprise.

Mr. Mack (and his two co-defendants through joinder with his motion) seek to bar admission of gang affiliation based on Delaware Rule of Evidence 403. He argues that the substantial prejudice of admitting such evidence is substantially outweighed by its marginal relevance. In so arguing, Mr. Mack reiterates his claim that the indicted charges are nothing more than individual drug sales and other discrete, unrelated events. According to Mr. Mack, evidence of his association with the Bloods street gang would have only minor relevance.

## II. Motion to Suppress Based Upon Lack of Necessity

Mr. Mack concedes that the affidavits provided probable cause to support the wiretaps. Here, he contests only whether the applications and affidavits in support of the warrants demonstrate their necessity. The Court considers his argument based solely upon a four-corners review of the 6251 Affidavit. When reviewing it in that light, the Court considers its recited facts to be true.

### A. Standards

Pursuant to statute, a Delaware Superior Court judge may issue an order authorizing the interception of wire, oral, or electric communications if he or she finds:

> (1) there is probable cause to believe that a person has committed, is committing, or is about to commit an enumerated crime; (2) there is probable cause to believe that communications concerning the enumerated offense will be obtained through the wire intercept; (3) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if attempted or would be too dangerous; and (4) there is probable cause to believe that the telephone number from which communications are being intercepted are being used in

11

the commission of an enumerated offense or are used by an individual engaged in criminal activity.[26]

In this case, Mr. Mack concedes that the Affidavit meets three of the statute's four requirements. Those three requirements overlap directly with United States and Delaware Constitutional requirements that warrants must be supported by probable cause.[27] Namely, Mr. Mack acknowledges that the Affidavit demonstrated probable cause that he and others were committing crimes and that the 6251 line (and the other lines) were being used to commit that criminal activity. He challenges only the third requirement: that the wiretap be supported by a finding of necessity.

Regarding necessity, an order authorizing the interception of a wire, oral, or electronic communication must also include "[a] full and complete statement as to whether or not other investigative procedures have been tried and failed, why such procedures reasonably appear to be unlikely to succeed if tried, or why such procedures would be too dangerous if tried."[28] A wiretap represents significant intrusion into a person's constitutionally recognized right to privacy and thus should be strictly interpreted. As a result, for purposes of demonstrating necessity, "[b]oilerplate assertions that are unsupported by specific facts relevant to the particular circumstances of [the] case are not sufficient."[29] Rather, an affidavit must

---

[26] 11 *Del. C.* § 2407(c)(1).

[27] *See* U.S. Const. amend. IV (providing that "[t]he right of the people to be secure in their persons. . . and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."); Del. Const. art. I, § 6 (providing that "[t]he people shall be secure in their persons. . . and no warrant to search any place, or to seize any person or thing, shall issue without describing them as particularly as may be; nor then, unless there be probable cause supported by oath or affirmation.").

[28] *See State v. Felton*, 2016 WL 3568523, at *13 (Del. Super. June 22, 2016) (citing 11 *Del. C.* §2407(a)(3)).

[29] *Id.* at *13.

allege specific circumstances that render normal investigative techniques ineffective to demonstrate that traditional methods would not likely succeed.[30]

On the other hand, judges are given broad discretion when issuing a wiretap order and the State's "burden of establishing compliance is not great."[31] A reviewing court must give great deference to the issuing judge's finding of necessity, just as when a court reviews his or her finding that there was probable cause.[32]

The necessity requirement is not an exacting one.[33] Rather, it is designed to inform the issuing judge of the difficulties involved in the use of conventional techniques.[34] In this regard, a wiretap order should not be invalidated merely because a defendant suggests, *post factum*, some investigative technique that might have been used but was not.[35] On balance, an issuing judge may lawfully issue a wiretap warrant only if he or she can reasonably conclude that normal investigative procedures have failed, appear *reasonably unlikely to succeed*, or are too dangerous.[36] An affidavit that explains the prospective or retroactive failure of several reasonable investigative techniques will suffice.[37]

---

[30] *Id.* at *13 (citing *United States v. Landeros-Lopez*, 718 F.Supp.2d 1058, 1063 (D. Ariz. 2010)).

[31] *State v. Perry*, 599 A.2d 769, 764 (Del. Super. May 3, 1990) (citing *United States v. Anderson*, 542 F.2d 428, 431 (7th Cir. 1976)).

[32] *Perry*, 599 A.2d at 765 (giving great deference to the issuing judge's determination of necessity); *see also United States v. Brown*, 761 F.2d 1272, 1275 (9th Cir. 1985) (recognizing, in the context of a wiretap case, that the reviewing court "gives substantial deference to the determination of the issuing judge").

[33] *State v. Kellam*, 2016 WL 3672241, at *5 (Del. Super. June 29, 2016).

[34] *Perry*, 599 A.2d at 764 (citing *United States v. Alfonso*, 552 F.2d 605, 611 (5th Cir. 1977), *cert. denied*, 434 U.S. 857 (1977)).

[35] *Perry*, 599 A.2d at 764.

[36] *See Kellam*, 2016 WL 3672241, at *5 (noting "[a]s to those techniques and investigations they elect not to pursue, they need only explain why those investigative techniques 'reasonably appear unlikely to succeed.'") (Emphasis added).

[37] *State v. Brinkley*, 132 A.3d 839, 852 (Del. Super. Mar. 22, 2016).

## B. Question of Necessity

To evaluate the necessity of the wiretaps, the Court must first assess the purpose of the investigation. In this case, the investigation focused on high-ranking members of the Bloods street gang as opposed to targeting only individual drug and weapons transactions.[38] Through general and specific recitations, the Affidavit satisfied the necessity requirement. Namely, it recites what other investigative procedures the task force tried but failed, and why such procedures appeared unlikely to succeed if tried in the future.

At a higher and general level, the Affidavit described investigative techniques both available and attempted by the task force. It explained to the issuing judge why some techniques failed and would likely continue to fail. It also described in detail how physical surveillance, although valuable, was not enough to identify the leadership of an organization like the Bloods gang, its drug suppliers, or where the organization's leaders chose to keep their supply.[39] Furthermore, it explained the organization's culture and closely-held nature.[40] According to the affiants, investigative techniques such as interviews of suspects, arrests for individual sales, and search warrants, insufficiently targeted the organization's leaders. In this regard, the Affidavit explained the investigative actions the task force took, what worked, what did not work, and what will not work in the future.

Furthermore, the language in the Affidavit is not mere boilerplate. Specific to Mr. Mack and other Bloods leadership, the Affidavit discussed various investigative techniques and explained to the issuing judge why they were inadequate to reveal the relationships between the players. The Affidavit explained

---

[38] 6251 Aff. at 1.
[39] *Id.* at 55.
[40] *Id.* at 59.

why an understanding of those relationships would be necessary to prosecute racketeering, solicitation, and conspiracy cases such as the one at hand.

The document is sixty-four pages. In its four-corners, it provides many case-specific recitations that support the issuing judge's findings of necessity. Based on the length of the affidavit, the best way to present relevant recitations is in a bulletized summary. The recitations that relate to necessity include:

(1) the Bloods gang criminal enterprise is distinctly compartmentalized;[41]
(2) the Bloods gang uses its members to carry out violent acts and to distribute drugs;[42]
(3) investigative means other than wiretaps were insufficient to show the scope of the Bloods organization's money trail, money laundering practices, and sources of supply;[43]
(4) the Bloods gang's sets have training and membership doctrines designed to keep information secure from outsiders;[44]
(5) when the affiants attempted to follow Mr. Mack before and after drug transfers, he drove evasively and took countermeasures that prevented successful surveillance;[45]
(6) the goal of the investigation was not to prosecute individual drug transactions; rather, it was to gather evidence regarding the activities and criminal relationships between the leaders of the organization;[46]
(7) the investigative techniques used prior to the wiretap application did "not and realistically [could not] lead investigators to the evidence necessary to prove the global criminal activity of the enterprise;"[47]
(8) the affiant's explained to the issuing judge that they believed that wiretaps were the "only available technique that [had] a reasonable likelihood of achieving all the objectives of the investigation;"[48]
(9) physical surveillance of Mr. Mack proved futile because he took countermeasures to evade law enforcement such as travelling on back roads

---

[41] 6251 Aff. at 4.
[42] *Id.* at 5.
[43] *Id.* at 6.
[44] *Id.* at 59-60.
[45] *Id.* at 32, ¶ 60.
[46] *Id.* at 51.
[47] *Id.* at 52.
[48] *Id.* at 52-53.

15

between transactions in a manner that the affiants believed would permit Mr. Mack to discover the surveillance;[49]

(10) Mr. Mack took additional counter measures to avoid surveillance, including selecting areas for drug exchanges such as Capitol Green, Liberty Court, and Manchester Square apartments;[50]

(11) those three Dover apartment complexes make surveillance reasonably likely to fail because the organization frequently employed lookouts, many members in those communities harbor suspicions regarding the police, and the three complexes' physical layouts provide no place from which to surveil without detection;[51]

(12) the task force used pole cameras on state property to surveil Mr. Mack's residence, and while the cameras showed vehicles coming and going form the property, they netted no information that helped with the goal of the investigation (targeting the enterprise and its leadership);[52]

(13) the Delaware State Police installed multiple surveillance cameras on the Bloods' "hang out spots" including on Cherry Street in Dover, but could not obtain information as to the organization's structure or activity;[53]

(14) the task force used a GPS tracker on Mr. Mack's vehicle, but it proved unhelpful because it could not identify whether Mr. Mack or another individual who frequently used the vehicle was driving the vehicle at a given time;[54]

(15) the affiants considered use of GPS trackers on vehicles used by other leaders of the Bloods organization but because those individuals all drove several different vehicles, including rental vehicles at times, doing so would not provide useful information;[55]

(16) the task force attempted a trash pull at Mr. Mack's home, but could not identify which can(s) corresponded to his unit because the cans serviced numerous row homes;[56]

(17) Mr. Mack and other leaders in the organization filter business down to lower-level dealers, which prevented useful drug "order ups" or "rips" that could aid in the racketeering investigation;[57]

---

[49] *Id.* at 53-54.
[50] *Id.* at 54.
[51] *Id.*
[52] *Id.* at 54, 55.
[53] *Id.* at 55.
[54] *Id.*
[55] *Id.*
[56] *Id.* at 56.
[57] *Id.*

(18) potential arrests following controlled buys involving Mr. Mack would not further the investigation that targeted the larger scope of the organization;[58]

(19) attorney general subpoenas provided some helpful information from prison phone calls, but the task force exhausted the usefulness of reviewing prison phone calls and those calls alone did not provide sufficient information regarding the organizations' structure and scope to permit prosecution;[59]

(20) undercover officers have been unable to infiltrate the Bloods organization;[60]

(21) confidential informants provided limited, though helpful information for purposes of probable cause, but had no or little direct contact with the high-level members of the organization;[61]

(22) controlled purchases of drugs from Mr. Mack by confidential informants could not lead to prosecution because "doing so would jeopardize the safety and continuing usefulness of the confidential informants" and even if Mr. Mack were prosecuted, the sole arrest and successful prosecution of [Mr. Mack] would not satisfy the goals of the investigation;"[62]

(23) search warrants would be ineffective because the task force did not know where to search;[63]

(24) review of social media entries from Mr. Mack and five other high-ranking Bloods gang members netted no information;[64] and

(26) the investigation into the Bloods organization reached the point where other traditional means of investigation appeared unlikely to yield any additional significant information.[65]

Mr. Mack's argument regarding necessity can be distilled to a contention that the State recited sufficient evidence in the Affidavit to successfully prosecute him for many individual acts. As a result, he contends the wiretaps were not necessary.

---

[58] *Id.* at 57.
[59] *Id.* at 58.
[60] *Id.* at 59.
[61] *Id.*
[62] *Id.* at 61.
[63] *Id.*
[64] *Id.* at 62.
[65] *Id.* at 63.

To the contrary, the Affidavit adequately demonstrated necessity as to the goals of the investigation. Namely, much of the information that supported his finding of probable cause came from confidential informants whose identities remain privileged. Furthermore, were the Court to accept Mr. Mack's argument, it would effectively bar the State from investigating the racketeering activities or the organization's leadership.[66]

Here, the issuing judge did not err when he found that the 6251 Affidavit (and the other affidavits by stipulation of the parties) satisfied the statute's necessity requirement. Namely, within its four-corners, it provided sufficient detail for the issuing judge to make a reasonable inference that traditional investigative means had not succeeded and would not be reasonably likely to succeed in the future. As a result, Mr. Mack's motion must be denied. As a further consequence, Mr. Mack's co-defendant's motions (considered through their joinder) are also denied.[67]

---

[66] *See United States v. Vastola*, 670 F.Supp. 1244, 1262 (D. N.J. 1987) (recognizing that "[t]o force the government to try some of the alleged criminal activities separately from others alleged to be part of the same RICO enterprise would prevent the government from prosecuting the types of crimes the statute was intended to combat.")

[67] Mr. Coleman's situation differs somewhat from his co-defendants. First, he joins Mr. Mack's suppression motion, as do they. When doing so, he raised no substantive arguments. Apart from that, Mr. Coleman also filed a motion to "raise and preserve for appeal" all arguments that he raised in the suppression hearing that the Court held earlier this year in his violation of probation and conditional release case (the "revocation case"). *See State v. Coleman*, 2021 WL 2181428, at *9 (Del. Super. May 27, 2021) (denying Mr. Coleman's motion to suppress in the revocation hearing). In the revocation case, Mr. Coleman challenged the legality of an administrative search. At the conclusion of his hearing, and after close of the evidence, he raised an issue about the wiretap claiming that the State violated the wiretap statute by not providing him copies of the wiretap application before the hearing. After the Court denied his motion, he requests to preserve his arguments while the revocation case awaits a decision on appeal in the Delaware Supreme Court. *Coleman v. State*, No. 192, 2021 (Del.). It seems reasonable to conclude that either he or the State would be collaterally estopped from contesting anew the suppression issues he raised in the revocation case in his now pending criminal case. Notably, neither Mr. Coleman nor the State requested to stay the present matter pending the appeal.

### III.    Motion for Relief from Prejudicial Joinder

Mr. Mack seeks relief from prejudicial joinder in two respects. First, he seeks to sever Counts 54, 55, and 56 which are weapons and ammunition offenses. These offenses include his alleged violent felony conviction from March 11, 2009, as an element. The State does not oppose that aspect of his motion. The State does oppose, however, Mr. Mack's request to sever the remainder of the case to require thirty-nine separate trials. It also opposes his request to sever the criminal solicitation first degree charge alleged in Count 133.

After fully considering the parties' positions, the Court grants Mr. Mack's request to sever Counts 54, 55, and 56 from the remainder of the case. Mr. Mack, without opposition of the State, demonstrates a reasonable probability that including those offenses in his trial would substantially and unfairly prejudice him. For the reasons discussed below, however, the Court denies Mr. Mack's motion to sever the balance of the charges.

### A. Standard

Mr. Mack's motion for relief from prejudicial joinder implicates two standards. First, the Court must decide if the indictment properly joined the offenses. Second, the Court must examine whether there is a reasonable probability of substantial prejudice if the predicate charges remain joined for trial.

At the outset, there is a presumption that offenses are appropriately indicted together "if the offenses charged are of the same or similar character or are based on the same act or transactions connected together or constituting parts of a common scheme or plan."[68] Generally, charges indicted together should stay together for trial.

---

[68] Super. Ct. Crim. R. 8(a).

Nevertheless, though charges may initially be appropriate for joinder, the Court should sever charges and grant separate trials if justice requires it.[69]  In deciding whether to sever charges in a racketeering indictment, the Court must first consider the two-prong test set forth by the Delaware Supreme Court in *Lloyd v. State*.[70]  There, the Supreme Court applied a two-part severance test in the context of *co-defendants* as opposed to *offenses*.[71]  Nevertheless, the test applies equally to the severance of offenses.

To determine whether the Court should sever predicate and racketeering offenses from one another, it must examine the charges for (1) relatedness, and (2) continuity.[72]  Applying this two-pronged test assures that there is a sufficient nexus between the predicate charges and the racketeering charge to try them together.[73]

Charges are related for purpose of the first prong if they "have the same or similar purposes, results, participants, victims or other methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events."[74]  Second, to remain joined, there must also be continuity between the predicate charges.[75]  There is continuity if "the predicate acts themselves involve threats of long-term racketeering activity *or* . . . the predicate acts are part of an entity's regular way of doing business."[76]

In addition to the two-prong test, the Court must also consider whether

---

[69]  *See* Super. Ct. Crim. R. 14 (permitting the severance of properly joined charges *or* defendants).
[70] *See State v. Lloyd*, 249 A.3d 768, 776-77 (Del. 2021) (quoting *H.J. Inc., et al. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 240 (1989)) (emphasis added).  Delaware has adopted this test from federal authority because it relies on federal caselaw interpretations of the RICO statute when interpreting Delaware's racketeering statute.
[71] *Lloyd*, 249 A.3d at 775.
[72] *Northwestern,* 492 U.S. at 240-41.
[73] *Id.* at 249.
[74] *Id.* at 240.
[75] *Lloyd*, 249 A.3d at 777.
[76] *Id.* (citing *Kendall v. State*, 726 A.2d 1191, 1194 (Del. 1999) (emphasis added).

trying the charges, in one case, unfairly and substantially prejudices the defendant. Accordingly, when the Court decides whether severance is appropriate, it must determine whether there is a reasonable probability that substantial prejudice may result from a joint trial.[77]   Substantial and unfair prejudice may arise if a jury is unable to segregate the allegations from the evidence, which can leave it unable to independently evaluate each charge.[78]   The burden is on the defendant to demonstrate that severance is appropriate.[79]

### B. Analysis

Pursuant to Superior Court Criminal Rule 8 (a), the Court's analysis begins with the presumption that the indicted charges should be joined.   Even when accepting Mr. Mack's argument in its entirety, the numerous charges against Mr. Mack (and Mr. Shorts) are at a minimum "of the same or similar character."    In fact, joining these offenses was appropriate based upon all three grounds provided in Rule 8(a).   Namely, when considering the facts alleged in the forty-three police reports incorporated into the bill of particulars, all charges revolve around how Mr. Mack (and to a lesser extent Mr. Shorts) obtained drugs, distributed drugs, possessed drugs, possessed weapons and ammunition, or planned some other criminal action designed to further a criminal enterprise that regularly sells illegal drugs.   In other words, they were properly joined at the outset because the offenses are (1) of the same or similar character, (2) based upon connected transactions, and (3) are part of a common scheme or plan.[80]

---

[77] *Taylor v. State*, 76 A.3d 791, 801 (Del. 2013).
[78] *State v. Reese*, 2019 WL 1897459, at *1 (Del. Super. Apr. 12, 2019).
[79] *Id.* at *2.
[80] *See* Super. Ct. Crim. R. 8(a) (providing for joinder of charges under these three circumstances). The State's choice as to how to structure the indictment in this case, and in similar cases, places a significant and unwieldy burden on the Court, the parties (including the State itself), and the trial management process.  The Court inevitably divided the case into trial groups (in this case five) to

21

The appropriateness of joinder, however, does not foreclose the possibility of severance before trial. Because this matter involves a racketeering offense, the Court must apply both (1) the *Lloyd* decision's two-prong test and (2) separately evaluate whether there is a reasonable probability that continued joinder will cause Mr. Mack and Mr. Shorts substantial and unfair prejudice.

Here, the grand jury indicted Mr. Mack, Mr. Shorts, and others for racketeering. The scope of that charge provides the appropriate lens and framework for review of this motion. Namely, the crime of racketeering includes three elements: (1) the defendant associated with an enterprise; (2) the defendant conducted the enterprise through a pattern of racketeering activity, or the defendant participated in the enterprise's affairs through a pattern of racketeering activity; and (3) the defendant intended to participate in that pattern of racketeering activity.[81]

An enterprise, for purposes of racketeering, includes any group of persons that are associated in fact and organized for either illicit or licit purposes.[82] The statutory definition of racketeering activity is also broad; it includes any Delaware felony and many itemized misdemeanors.[83] The General Assembly intended the definition of racketeering to be broad.[84]

Mr. Mack contends that each of the thirty-nine separate groupings for which he requests severance stem from separate and discrete events. He alleges that because they are separate and discrete, they should not be tried together. Given the lack of overlap, he argues that the sheer weight of proceeding with so many charges in the same case (eighty-eight) will make the jury unable to segregate the charges.

---

effectively manage the matter. That action could have been performed more efficiently had the State considered how the cases could best be structured when the State presented them to the Grand Jury for indictment.

[81] *White v. State*, 243 A. 2d 381, 398 (Del. 2020).

[82] *Id.* at 399 (citing 11 *Del. C.* § 1502(3)).

[83] *Id.* (citing 11 *Del. C.* § 1502(9)).

[84] *Id.* at 400.

He contends that no reasonable jury will be able to differentiate between these separate transactions.

The State counters that each of the eighty-seven predicate offenses constitute racketeering activity as defined by 11 *Del. C.* §1502(5) and (9).  Together, the State alleges those activities create a pattern.  Furthermore, it contends that evidence regarding each of the eighty-seven predicate charges would be separately admissible in a trial to prove Count 1's racketeering charge.   Finally, the State contends that many of the offenses are directly connected.   For instance, it argues that Counts 7 and 8 allege that Mr. Mack imported drugs into Delaware to distribute them.  It further contends that subsequent counts alleging illegal conduct by Mr. Mack represent what he and the organization did with the drugs after importing them.

The purpose of the *Lloyd* decision's two-prong test is to ensure that the predicate offenses have a sufficient nexus to the racketeering charge for appropriate joinder at trial.[85]   The test, that recognizes the propriety of joinder, is appropriate because it recognizes the State's right to meet its burden of proving a *pattern* of racketeering activity.[86]  The offenses may be joined for trial if there is a sufficient nexus.  If there is an insufficient nexus, they should not be joined.

Regarding the first-prong, Mr. Mack correctly observes that many of the offenses involve different transactions.  They nevertheless fit within the definition of relatedness for purposes of a racketeering offense.  Namely, they have similar purposes, results, participants, and methods of commission.[87]   They also relate directly to, and constitute components of, the racketeering charge.  Here, Mr. Mack raises merely a factual issue regarding whether the charges *should be* considered a

---

[85] *Lloyd*, 249 A.3d at 776-77 (citing *Northwestern Bell*, 492 U.S. at 240).
[86] *See Northwestern Bell*, 492 U.S. at 239 (recognizing this premise in the context of the Federal RICO statute) (emphasis added).
[87] *See id.* at 240.

pattern. That will be a jury decision. If the jury determines that Mr. Mack is guilty of some or all predicate offenses, the jury can then decide if the State has proven that some or all of them constituted a pattern of racketeering activity.

Furthermore, the conduct described in the bill of particulars spanned a period of three months (inclusive of July and September 2020).[88] It thus satisfies the second prong of the *Lloyd* test. Namely, the conduct described in the forty-three police reports demonstrates that Mr. Mack, Mr. Shorts, and their co-defendants had a "regular way of doing business." Moreover, when the Court considers that three-months of alleged activity in conjunction with the years-long conduct referenced in the Affidavit, the racketeering activity was long-term. As such, the racketeering activity would likely continue if left unabated. As a result, Mr. Mack (and Mr. Shorts through his joinder of Mr. Mack's motion) do not meet their burden of demonstrating the need for severance. The predicate charges have a sufficient nexus to the racketeering charge.

Although there is a direct nexus between the charges, the joinder of certain charges could still cause sufficiently unfair prejudice to require severance. For instance, the charges of possession of weapons and ammunition by a prohibited person include an element referencing Mr. Mack's violent felony conviction. Mr. Mack and the State stipulated to severing those charges because they agreed that including them in the larger case would cause sufficient unfair prejudice.

Apart from those charges, the Court recognizes that trying a case with eighty-five remaining charges poses a risk of prejudice to Mr. Mack.[89] In one sense, it will cause him prejudice by permitting the State the opportunity to prove the lead offense, racketeering. Evidence that supports one party inevitably prejudices the opposing party. The relevant question in the analysis hinges on *unfair* prejudice.

---

[88] Indictment (Apr. 15, 2021).

[89] The indictment charges Mr. Shorts with ten counts of criminal activity.

Here, the Court denies Mr. Mack's motion in large part because he does not demonstrate a reasonable probability that he will be substantially and unfairly prejudiced by a joint trial, other than by joinder of the weapons and ammunition offenses. The Delaware Supreme Court has recognized that when an offense charged in an indictment is inextricably intertwined with predicate offenses, the charges should remain joined.[90] If the Court were to grant Mr. Mack's motion, there would be thirty-eight separate trials, and then a thirty-ninth where the State could permissibly admit the same evidence brought forth in the first thirty-eight. The predicate charges and the racketeering charge are inextricably intertwined. In this regard, he does not meet his burden of demonstrating substantial prejudice that cannot be addressed through a limiting instruction.

Finally, as to Count 133, solicitation first degree, the State alleges that Mr. Mack solicited his Co-defendant McIvor to kill a person. Mr. Mack separately requests that the Court sever it because he contends that it represents completely unrelated alleged conduct. As the State correctly contends, however, the solicitation charge relates to the alleged pattern of racketeering activity and is part and parcel of an allegedly continuous operation of the enterprise. Consistently with the other predicate offenses (other than Counts 54, 55, and 56), Mr. Mack does not meet his burden of showing that including Count 133 in the same trial will cause him substantial prejudice.

On balance, the Court recognizes the number of charges involved in the case and the possibility that they could unfairly impact a jury's deliberations absent some mitigating measures. To mitigate such unfair prejudice, the Court will provide limiting instructions similar in form to the instruction reviewed by the Delaware Supreme Court in its *Lloyd* decision.[91] Such limiting instructions in both Mr. Mack

---

[90] *Taylor*, 76 A.3d at 801.
[91] *Lloyd*, 249 A.3d at 778.

and Mr. Shorts' trials will adequately address possible prejudice due to the multiple parties and charges involved.[92]

## IV.   Motion to Preclude References and Evidence Regarding Gang Affiliation

Mr. Mack, and Mr. Coleman and Mr. Shorts through joinder with Mr. Mack's motion, ask the Court to bar references at trial to their alleged gang affiliation.   Mr. Mack relies on Delaware Rule of Evidence 403.   Because the parties did not fully develop their arguments, the Court defers its decision until the State attempts to provide a proffer sufficient to demonstrate the evidence's relevance and to permit the Court to conduct a D.R.E 403 balancing.

### A.  Standard

Evidence is relevant if it tends to make a fact of consequence more or less probable then it would be without the evidence.[93]   Relevant evidence is admissible unless either a statute, another rule of evidence, a rule of procedure, or other law make it inadmissible.[94]   Here, Delaware Rule of Evidence 403 may make it inadmissible.  That Rule permits the Court to exclude evidence if its probative value is substantially outweighed by one of the concerns listed in the Rule.[95]   Mr. Mack raises unfair prejudice as the concern.

---

[92] Neither Mr. Mack nor Mr. Short raised any issue regarding the prejudice of including their co-defendants in their respective trial groups.  Accordingly, the Court has not considered that issue.
[93] D.R.E. 401.
[94] D.R.E. 402.
[95] D.R.E. 403.

## B. Analysis

Mr. Mack seeks to bar introduction of evidence or references to his alleged affiliation with the Bloods street gang. Consistent with that request, he also requests the Court to bar the State from referencing a tattoo that would link him to the Bloods gang.

In its written response, the State counters that the Bloods street gang fits squarely within the definition of a racketeering enterprise and that the State carries the burden of proving the existence of such an enterprise. According to the State's written submission, the Bloods gang is the enterprise at the center of the racketeering allegation. The State argues it should not be precluded from proving Mr. Mack's affiliation with that entity. At oral argument, the State articulated no purpose or source for this evidence, however. Rather, the State requests leave to do so at some point prior to trial, outside the presence of the jury.

Based on the written submissions and the other evidence discussed in this memorandum opinion, Mr. Mack's alleged affiliation with the Bloods gang has significant relevance. As the State emphasized in its written submission, evidence of Mr. Mack's particular gang affiliations is relevant to prove that Mr. Mack participated in the affairs of a particular enterprise. Evidence of gang participation is generally admissible where defendants are charged with participating in such an organization, or the allegations of such participation are inherent in the State's burden of proof.[96] On the other hand, the Court should be "ever-cognizant of the highly incendiary nature of gang evidence and the possibility that a jury may determine guilt by association rather than by its belief that the defendant committed

---

[96] Clifford S. Fishman & Anne T. McKenna, *Relevance and Prejudice*, 7 Jones on Evidence § 62:65 (7th ed. 2020).

the criminal acts."[97] There is also the concern that the jury could wrongly consider it as character evidence.

Ultimately, the Court's decision will turn on the degree, if any, that Mr. Mack will be *unfairly* prejudiced and whether such prejudice substantially outweighs the evidence's relevance. If the Court admits the evidence, the Court must further consider the options available to mitigate unfair prejudice on the one hand while permitting the State to present evidence central to the racketeering allegation on the other.

At oral argument, the State presented no further argument regarding the tattoo's potential admissibility or the admissibility of other evidence of Blood street gang affiliation. The State did not identify how it intended to prove affiliation. Rather, the State argued that Mr. Mack's motion insufficiently raised the issue, so it could not respond at the oral argument.

It is the State, however, who is the proponent of the evidence. Accordingly, it is the State that carries the burden to demonstrate its admissibility.[98] Without a detailed proffer by the State regarding what evidence it seeks to admit, the Court cannot conduct the required balancing. Nor can the Court consider a menu of measures that could mitigate unfair prejudice if it ultimately admits the evidence.

Accordingly, the Court defers until trial its decision regarding the admissibility of evidence regarding Mr. Mack's tattoo and other evidence of his alleged gang affiliation. Mr. Coleman, and Mr. Shorts are scheduled in the first trial group on October 25, 2021. Mr. Mack's trial is scheduled in January 2022. The State shall not reference gang affiliation in either trial unless the Court permits it after further argument outside the presence of the jury.

---

[97] *See Gutierrez v. State*, 32 A.3d 2, 12 (Md. 2011) (recognizing the inflammatory nature of evidence regarding gang membership).
[98] D.R.E. 104(a).

## V.      Conclusion

For the reasons discussed above, the Court orders the following:

1.  Defendants Devin Coleman, Jaron White, Jermaine Harmon, Joshua Shorts, Keith Maye, Keontre Hynson, and Brandon Hollar's motions to join Defendant Marquis Mack's motion to suppress are **GRANTED**;

2.  Defendant Joshua Shorts' motion to join Defendant Mack's motion for relief from prejudicial joinder is **GRANTED**;

3.  Defendants Coleman and Shorts' motions to join Defendant Mack's motion *in limine* are **GRANTED**;

4.  Defendants Mack, Coleman, White, Harmon, Shorts, Maye, Hynson, and Hollar's motion to suppress evidence is **DENIED**;

5.  Defendant Mack's motion for relief from prejudicial joinder is **GRANTED, in part, and DENIED, in part**;

6.  Defendant Jaron Shorts' motion for relief from prejudicial is **DENIED**; and

7.  Defendants Mack, Shorts, and Coleman's motion *in limine* is **DEFERRED**.

/s/Jeffrey J Clark  
Resident Judge